## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BROOKS AUTOMOTIVE GROUP, INC. *formerly known as* BROOKS OLDSMOBILE-CADILLAC-GMC TRUCK, INC., B.L.P. REAL ESTATE, LLC,

Case No. 2:18-cv-00798-AJS

Hon. Arthur J. Schwab

        Plaintiffs,

v.

GENERAL MOTORS LLC,

        Defendant.

---

## DEFENDANT GENERAL MOTORS LLC'S
## PARTIAL MOTION TO DISMISS

---

Defendant General Motors LLC ("GM") by its counsel Dykema Gossett PLLC, moves pursuant to Fed. R. Civ. P. 12(b)(6) for an order (a) dismissing all claims alleged by Plaintiff B.L.P. Real Estate, LLC ("BLP"), (b) dismissing all claims alleged by Plaintiff Brooks Automotive Group, Inc. ("Brooks") except the portion of Count II concerning the $150,000 difference between the November 17, 2016 Asset Purchase Agreement and the June 27, 2017 Asset Purchase Agreement, and (c) dismissing the claims for punitive damages.

1.      Plaintiffs filed this litigation on June 14, 2018, alleging four counts against GM: 1) Violation of Section 12(b)(5) of the Pennsylvania Board of Vehicles Act; 2) Violation of Section 12(b)(3) of the Pennsylvania Board of Vehicles Act; 3) Tortious Interference with Contract; and 4) Breach of Duty of Good Faith and Fair Dealing.

2.      Plaintiffs seek $1.3 million in damages.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

3.      Brooks seeks (a) the $150,000 difference in purchase price between the November 17, 2016 Asset Purchase Agreement and the June 27, 2017 Asset Purchase Agreement and (b) $850,000 in unidentified "damages" untethered to any well-pleaded facts.

4.      BLP seeks $300,000 for the difference between what the purchaser actually paid BLP for the real property and the value of the alleged "offer" that BLP claims to have had from an unidentified third party.

5.      This Court should dismiss all claims alleged by BLP and all claims alleged by Brooks except the portion of Count II seeking the difference in value between the two asset purchase agreements referenced in the Complaint because both Brooks and BLP (collectively, "Plaintiffs") failed to state claims upon which relief can be granted.

6.      Granting this motion will allow the parties to focus on the sole issue in dispute: Whether GM's decision to decline Brooks's initial sale proposal violated Section 12(b)(3) of the Pennsylvania Board of Dealers Act (the "Dealer Act"), and, if so, whether that denial damaged Brooks in the amount of $150,000.[1]

7.      Accordingly, for those reasons set forth in GM's Brief in Support, which is filed concurrently with this Motion and incorporated herein, GM respectfully requests that its Partial Motion to Dismiss be granted.

WHEREFORE, GM requests that this Court enter an order (a) dismissing all claims alleged by BLP, (b) dismissing all claims alleged by Brooks except the portion of Count II concerning the $150,000 difference between the November 17, 2016 Asset Purchase Agreement

---

[1] GM denies the allegations against it, denies liability to Plaintiffs, and denies that Plaintiffs sustained any damages.  GM will show that its decisions were made in good faith and complied with the law; however, resolving these issues will require evidence beyond the pleadings, so GM will not address in this motion the allegations in Count II through which Brooks seeks the purchase price differential.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

and the June 27, 2017 Asset Purchase Agreement, and (c) dismissing the claims for punitive damages.

<div style="margin-left: 45%;">

Respectfully Submitted,

DYKEMA GOSSETT PLLC

By: /s/Robert Hugh Ellis
Robert Hugh Ellis, Esq.
*Attorneys for General Motors LLC*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6723
rellis@dykema.com

</div>

Dated:  October 4, 2018

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BROOKS AUTOMOTIVE GROUP, INC. *formerly*
*known as* BROOKS OLDSMOBILE-CADILLAC-
GMC TRUCK, INC., B.L.P. REAL ESTATE, LLC,

                             Plaintiffs,

v.

GENERAL MOTORS LLC,

                             Defendant.

Case No. 2:18-cv-00798-AJS

Hon. Arthur J. Schwab

_____

**[PROPOSED] ORDER RE GENERAL MOTORS LLC'S PARTIAL**
**MOTION TO DISMISS**
_____

AND NOW, this_____ day of_____, 2018, IT IS HEREBY ORDERED THAT Defendant General Motors LLC's ("GM's") Partial Motion to Dismiss (Doc. No.___) is GRANTED.

IT IS FURTHER ORDERED that all claims alleged by Plaintiff B.L.P. Real Estate, LLC ("BLP") are DISMISSED, and that BLP is no longer a party to this litigation;

IT IS FURTHER ORDERED that all claims alleged by Plaintiff Brooks Automotive Group, Inc. ("Brooks") except the portion of Count II concerning the $150,000 difference between the November 17, 2016 Asset Purchase Agreement and the June 27, 2017 Asset Purchase Agreement are DISMISSED;

IT IS FURTHER ORDERED that Plaintiffs' claims for punitive damages are DISMISSED.

                             SO ORDERED

                             _____

                             Hon. Arthur J. Schwab
                             United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BROOKS AUTOMOTIVE GROUP, INC. *formerly known as* BROOKS OLDSMOBILE-CADILLAC-GMC TRUCK, INC., B.L.P. REAL ESTATE, LLC, | Case No. 2:18-cv-00798-AJS |
| Plaintiffs, | Hon. Arthur J. Schwab |
| v. | |
| GENERAL MOTORS LLC, | |
| Defendant. | |

**BRIEF IN SUPPORT OF GENERAL MOTORS LLC'S**
**PARTIAL MOTION TO DISMISS**

## I.   INTRODUCTION

This Court should dismiss all claims alleged by B.L.P. Real Estate, LLC ("BLP") and all claims alleged by Brooks Automotive Group ("Brooks") except the portion of Count II seeking the difference in value between the two asset purchase agreements referenced in the Complaint because both Brooks and BLP (collectively, "Plaintiffs") fails to state claims upon which relief can be granted.  Granting this motion will allow the parties to focus on the sole issue in dispute: Whether GM's decision to decline Brooks's initial sale proposal violated Section 12(b)(3) of the Pennsylvania Board of Dealers Act (the "Dealer Act"), and, if so, whether that denial damaged Brooks in the amount of $150,000.[1]

---

[1] GM denies the allegations against it, denies liability to Plaintiffs, and denies that Plaintiffs sustained any damages.  GM will show that its decisions were made in good faith and complied with the law; however, resolving these issues will require evidence beyond the pleadings, so GM will not address in this motion the allegations in Count II through which Brooks seeks the purchase price differential.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

## II.     STATEMENT OF FACTS

### A.     Brooks Could Not Sell Or Relocate Its Dealership Without GM's Approval.

Brooks was an authorized GM dealer for GM's Buick and GMC brands in Connellsville, Pennsylvania.  (Compl. ¶ 18.)   It operated under a General Motors Dealer Sales and Service Agreement ("Dealer Agreement").   (Compl. Ex. I, Dealer Agreement, attached as Ex. 1.)[2] Article 4.4.2 of the Dealer Agreement addresses changes to a dealership's location:  "No change in location or in the use of Premises . . .  will be made without [GM's] prior written authorization pursuant to its business judgment[.]"   (*Id.* § 4.42.)   Article 12.2 of the Dealer Agreement addresses proposed transfers of dealership assets, requires the dealer to provide GM notice of a proposed sale, and states that GM will evaluate

> [F]actors such as (a) *the personal, business, and financial qualifications of the proposed dealer operator* and investors, and (b) whether the proposed change is likely to result in a successful dealership operation with acceptable management, capitalization, and ownership which *will provide satisfactory sales, service, and facilities at an approved location*, while promoting and preserving competition and customer satisfaction.

(*Id.* § 12.2 (emphasis added).)   The Dealer Agreement also provides that "[a]ny material change in Dealer's proposal, including change in price, facilities, capitalization, proposed investors, or dealer operator, *will be considered a new proposal, and the time period for* [*GM*] *to respond shall recommence*."   (*Id.* § 12.2.4 (emphasis added).)

Co-Plaintiff BLP is not (and was not) a party to the Dealer Agreement with GM.

---

[2] "[A] written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F. Supp. 1192, 1196 (3rd Cir. 1993).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

**B.      Brooks Executed An Asset Purchase Agreement Expressly Contingent Upon GM Approving The Buyer's Relocation Of The Dealership.**

On or about November 17, 2016, Brooks and Casey Harper and C Harper Holdings, Inc. (collectively, "Harper") entered into an asset purchase agreement pursuant to which Brooks would sell the dealership to Harper for $750,000 (the "First APA"). (11/17/2016 APA, Compl. Ex. B, attached as Ex. 2; Compl. ¶ 31.)  The First APA did not reference the sale of the real property where Brooks operated.  (Ex. 2, First APA.)   Under the First APA, Harper would discontinue dealership operations in Connellsville and relocate them to Harper's existing operation in Belle Vernon, Pennsylvania. (Ex. 2, First APA § 3.2; Compl. ¶ 32.)  This proposal would leave GM without Buick and GMC representation in Connellsville while adding another GMC point to the Pittsburgh market, which already has six GMC dealerships. (4/19/2018 Letter, Dkt. 1, Compl. Ex. D, attached as Ex. 3; *see also* Compl. ¶ 30.)  Brooks and Harper conditioned both the sale and the relocation on GM's approval:

> Buyer understands that it must obtain the GMC and Buick approval to operate as a GMC and Buick dealer at Buyer's current location and that said approval is required for Seller to transfer or sign its GMC and Buick dealership or GMC and Buick dealerships [sic] sales and service agreement to Buyer. *This agreement is contingent upon GMC's approval of the transfer of the dealership licenses to Buyer at Buyer's current location.*

(First APA, Ex. 2 (emphasis added).)

BLP owned the real property where Brooks operated.  (Compl. ¶ 2.)  BLP alleges that "an unrelated third party" had made a "$1.3 million offer" to buy the real estate if the Brooks and Harper deal closed.  (*Id.* ¶ 30.)  BLP was not a party to the First APA. (Ex. 2.)  BLP does not allege that GM had any knowledge of this purported $1.3 million offer.

**C.      GM Rejected The First APA Due To The Proposed Relocation.**

Brooks submitted the First APA to GM in December 2016. (Compl. ¶ 34.)  According to

3

its Complaint, Brooks provided *its portion* of the required information concerning the sale by January 27, 2017. (Compl. ¶¶ 33-35.) Brooks knew that GM also required information from Harper, but Brooks failed to allege facts concerning the date on which Harper provided its portion of the required information to GM. (*Id.* ¶¶ 39-40.) Instead, Brooks alleges only that Harper's information was provided "[o]ver the course of the next several weeks" and that eventually "[a]ll requested information was provided to GM."[3] (*Id.*)

On April 19, 2017 – 50 days after GM had a complete proposal package – GM sent Brooks a letter rejecting the proposal. (Ex. 3, 4/19/2017 Letter; Compl. ¶ 43). In that letter, GM explained in detail why it had declined the relocation, including that it resulted in the abandonment of Connellsville market, would inconvenience rural customers, and would add a seventh GMC dealership into the Pittsburgh market, resulting in increased competition between dealers for the same sales. (Ex. 3.) As Plaintiffs concede, GM rejected *the relocation*, not the buyer. (Compl. ¶ 47; *see also* June 14, 2017 Letter, Dkt. 1, Compl. Ex. E, attached as Exhibit 4.) GM invited Brooks and Harper to submit a revised proposal without the relocation, which GM would evaluate in good faith. (Ex. 4.)

### D. Brooks Waited Another Two Months To Submit A New Proposal.

Brooks did not submit a revised Asset Purchase Agreement (the "Second APA") until June 27, 2017. (Second APA, Dkt. 1, Compl. Ex. F, attached as Exhibit 5.) The Second APA, like the First APA, required GM's approval, but unlike the First APA, the Second APA did not propose a relocation; Harper would continue to operate the dealership where Brooks had operated. (*Id.*) The Second APA purchase price was $600,000. (*Id.*) Under an entirely separate agreement, BLP agreed to sell the real property to Harper for $1,000,000. (Real Property

---

[3] Although not necessary for the resolution of this motion, GM notes that discovery will establish that GM did not have the required information until March 1, 2017.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Agreement, Dkt. 1 Compl. Ex. G, attached as Ex. 6.)   Brooks alleges that GM received all required information on July 11, 2017.   (Compl. ¶ 55.)   On September 5, 2017 – 57 days later – GM approved the second proposal.   (Compl. ¶ 59.)   Six weeks later, on October 23, 2017, Brooks and Harper closed on the dealership sale, and BLP and Harper closed on the real property sale.   (Compl. ¶ 60.)

> ### E.   Brooks And BLP Filed This Lawsuit Against GM Seeking "Damages" Purportedly Resulting From GM's Denial Of The First APA Proposal.

Plaintiffs seek $1.3 million in damages:

- Brooks seeks (a) the $150,000 difference in purchase price between the First APA and the Second APA and (b) $850,000 in unidentified "damages" untethered to any well-pleaded facts; and

- BLP seeks $300,000 for the difference between what Harper actually paid BLP for the real property and the value of the alleged "offer" that BLP claims to have had from an unidentified third party.

(Compl. ¶ 76.)

## III.   APPLICABLE LEGAL STANDARD

GM files this motion under Fed. R. Civ. P. 12(b)(6).   When considering a motion to dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A properly pleaded complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Id.* (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.   ARGUMENT

> ### A.   Brooks's "Delay" Claim (Count I) Should Be Dismissed.

In Count I, Brooks claims as "damages" the $150,000 difference in value between the

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

First APA and the Second APA because, according to Plaintiffs, GM did not timely reject the First APA. This claim fails as a matter of law for three reasons.

First, Brooks does not allege facts supporting its claim that GM's response was untimely. Under 63 P.S. § 818.12(b)(5), GM had to respond to the First APA "within 60 days of receipt of a *written request on the forms, if any, generally utilized by the manufacturer or distributor for such purposes and containing the information required*." *Id.* (emphasis added). Brooks concedes that GM required information from both Brooks (the seller) and Harper (the buyer) concerning the First APA proposal. (Compl. ¶¶ 37-40.) But Brooks did not allege facts concerning the date when GM received the information required from *Harper*. Instead, Brooks vaguely asserts that GM received Harper's information "[o]ver the course of the next several weeks." (*Id.* ¶ 40.) Without alleging facts about when GM received all the required information from Harper, Brooks has failed to state a claim that GM's response was untimely.

Second, even if the Complaint had identified the date when GM received all the required information from Harper, Brooks does not have a claim for damages under Section 818.12(b)(5). That statute has a specific remedy: "The failure to respond within the time period set forth in this paragraph *shall be deemed to be approval of the request*, and the manufacturer or distributor shall *execute and deliver a franchise to the applicant within 30 days of the expiration of this time period*." 63 P.S. § 818.12(b)(5) (emphasis added). According to Brooks, GM's had to respond to the first proposal on March 21, 2017. (Compl. ¶ 93.) If Brooks were correct, then it should have demanded that GM award Harper the franchise and approve the relocation of the GMC dealership at that time. Brooks did not do that. Instead, Brooks negotiated a new deal with Harper (*i.e.*, the Second APA), which GM approved. Brooks cannot negotiate, execute, and close on the Second APA proposal but still "enforce" the First APA. The First APA no longer

6

exists, and Brooks no longer has a dealership to sell.[4]  In short, Brooks waived its right to relief under Section 818.12(b)(5) by negotiating, executing, and closing on the Second APA.

Third, the Complaint does not allege any facts connecting Plaintiffs' "damages" to the purportedly delayed issuance of GM's April 19th rejection letter.  Even if the Court ignores that GM necessarily required documents and information from Harper (the proposed purchaser) before the 60-day time period began to run, and relies upon the March 21, 2017 date by which Brooks alleges that GM should have responded, this results in GM's response being, at most, 29 days late.  Nowhere in Plaintiffs' complaint, however, are any damages alleged that purportedly resulted from this alleged 29-day delay.  Plaintiffs' claimed damages, if any, arise from the *fact* that GM denied the First APA proposal due to the relocation (Count II) – not the *timing* of GM's denial (Count I).  (Compl. ¶ 76.)[5]  For these reasons, Count I should be dismissed in its entirety.

### B.    Brooks's "Improper Denial" Claim (Count II) Should Be Dismissed In Part.

This Court should dismiss Count II, in part, because Brooks failed to state a claim for $850,000 in unidentified "damages" associated with GM's denial of the First APA.   Under Pennsylvania law, a manufacturer may not:

> (3)    *Unreasonably withhold consent* to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth who meets the manufacturer's . . . reasonable requirements for appointment as a dealer.

63 P.S. § 818.12(b)(3) (emphasis added).  A party "injured" by a violation of this statute may

---

[4] Brooks sold Harper the dealership under the Second APA, so Brooks lacks standing to enforce the First APA.  If Brooks had standing, then its claim in Count I would still fail because Brooks seeks to unwind the Second APA and divest non-party Harper of title so that Brook can re-sell the dealership back to non-party Harper at a higher price.

[5] Brooks alleged "further delay in processing the June 2017 APA," but the undisputed facts show that GM responded to the Second APA proposal 57 days after all required information had been submitted to GM. (Compl. ¶¶ 57-59.)  Given that GM responded to the Second APA proposal within the 60-day window under Section 818.12(b)(5), there was no "further delay" to support the "delay" claim asserted in Count I.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

seek damages.  63 P.S. § 818.29.

At this time, GM is not seeking the dismissal Count II with respect to Brooks's claim for $150,000 in "damages" based upon the difference in purchase price between the First APA and the Second APA.  Brooks claims that (a) it could have sold the dealership to Harper for $750,000, but (b) GM's actions caused Brooks to sell the dealership to Harper for $600,000. (Compl. ¶ 76.)  GM denies these allegations but recognizes that they present questions of fact which cannot be decided at the pleadings stage.

The same is not true for Brooks's claim for an *additional* $850,000 in "damages" resulting from the rejection of the First APA.  (*Id.* at ¶¶ 76,)  Brooks offers only conclusory assertions that it "lost in excess of $850,000 as a result of GM's actions in denying the proposed sale" without alleging *facts* to support those assertions or identifying any grounds for the purported "loss."  (*Id.* ¶ 76.)  These unsupported conclusions are precisely the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 677; *see also Cleveland v. Rotman*, 297 F.3d 569, 575 (7th Cir. 2002) ("[B]ecause [plaintiff] failed to allege an adequate factual basis for its damages claim, the district court properly dismissed it.").

### C.    Brooks's Tortious Interference Claim (Count III) Should Be Dismissed.

Count III should be dismissed for two independent reasons.  GM cannot commit tortious interference by exercising its rights to deny a dealership sale and proposed relocation.   In Pennsylvania, intentional interference with a contract has four elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) *purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring*; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN  48243

*Crivelli v. GMC*, 215 F.3d 386, 394 (3rd Cir. 2000) (internal quotations omitted, emphasis added).  An auto manufacturer does not – and cannot – tortiously interfere with a proposed dealership transfer by exercising its own rights concerning that proposal.  *Id.* at 395 (analyzing GM's exercise of a right of first refusal:  "While GM's exercise of its contractual right of first refusal necessarily interfered with the purchase agreement . . .  it does not subject GM to liability for interfering with their contract."); *see also Rosado v. Ford Motor Co.*, 337 F.3d 291, 296 (3rd Cir. 2003) (same).  Under both the Dealer Agreement and Pennsylvania law, GM had the right to reject the proposal.[6]  Both Article 4.4.2 of the Dealer Agreement and Section 818.27(c) of the Dealer Act gave GM the right to decline Harper's proposed relocation under the First APA.  Exercising those rights was not tortious interference with the First APA.

> **D.**     **Brooks's Breach Of Good Faith And Fair Dealing Claim (Count IV) Should Be Dismissed.**

Brooks's claim for breach of the duty of good faith and fair dealing (Count IV) should be dismissed because (1) no such cause of action exists independent of contract under Pennsylvania or Michigan law, (2) the duty cannot be read into the Dealer Agreement concerning GM's denial of the relocation request, and (3) the various other "breaches" alleged by Brooks are either time-barred or insufficiently pleaded.

> **1.**     **Neither Pennsylvania Nor Michigan Recognize A Claim For Breach Of Duty Of Good Faith And Fair Dealing Outside Of Contract.**

As a threshold matter, there is no cause of action for breach of the duty of good faith and fair dealing independent of a breach of contract.  In Pennsylvania:

> [w]here a duty of good faith arises, it arises under the law of contracts, not under the law of torts.  Thus, a claim for a breach of

---

[6] Brooks did not (and will not be able to) explain how GM could "interfere" with the First APA when the parties to that agreement (*i.e.*, Brooks and Harper) *conditioned* the entire transaction on GM's approval of the sale and relocation.  (*See* First APA, § 3.2.)

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

the implied covenant of good faith and fair dealing is, in its
essence, a breach of contract claim.

*Walkup v. Santander, N.A.*, 147 F. Supp. 3d 349, 363 (E.D. Penn. 2015) (modification in

original, internal quotations omitted).  Brooks concedes that Michigan law governs the breach of

good faith and fair dealing claim.   (Compl. ¶ 110.)   "Michigan does not recognize an

independent tort action for an alleged breach of a contract's implied covenant of good faith and

fair dealing."  *Ulrich v. Fed. Land Bank*, 192 Mich. App. 194, 197, 480 N.W.2d 910 (1991); *see*

*also Fodale v. Waste Mgmt. of Mich., Inc.,* 271 Mich. App. 11, 35, 718 N.W.2d 827, 841 (2006).

**2.      As A Matter Of Law, The Duty Of Good Faith And Fair Dealing Is
Not Implicated In GM's Relocation Decision.**

Under Michigan law, an implied covenant of good faith and fair dealing can be read into

a contract only in certain circumstances.  "Generally speaking, the implied covenant seeks to

protect the contracting parties' reasonable expectations."  *Hubbard Chevrolet v. General Motors*

*Corp.*, 873 F.2d 873 876 (5th Cir. 1989) (applying Michigan law).  "Michigan law does not

imply the good faith covenant where parties have unmistakably expressed their respective

rights."  *Id.* at 877 (internal quotations omitted); *see also Stephenson v. Allstate Ins. Co.*, 328

F.3d 822, 826-27 (6th Cir. 2003) (a court should "decline[] to ascribe a covenant of good faith

and fair dealing in the interpretation of a contract to override express contract terms."  (internal

quotation omitted)).

The Fifth Circuit addressed this precise issue with GM's pre-bankruptcy predecessor,

General Motors Corporation ("Old GM").  *See Hubbard*, 873 F.2d at 878.  *Hubbard* concerned a

relocation dispute between a dealership and Old GM.  Like the Dealer Agreement to which

Brooks used to be party, the Dealer Agreement in *Hubbard* stated that '[n]o change in Dealership

Location . . . will be made without the written approval of General Motors."  *Id.* at 877.  The

dealer requested permission to relocate, but after Old GM declined that request, the dealer sued

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

Old GM claim that it breached the duty of good faith and fair dealing.  *Id.* at 874.  On appeal, the Fifth Circuit held that "the implied covenant of good faith and fair dealing does not apply to this relocation dispute as a matter of law."  *Id.* at 876.  Specifically:

> [T]he covenant has no role to play in the relocation dispute between GM and [the dealer] . . . *These clauses. . . flatly preclude relocation absent GM's approval . . . The contract does not limit the reasons upon which GM can base its relocation decisions.* [The dealer] and GM have deferred no decisions regarding relocation or the relevant factors.  *They gave GM the authority to approve or disapprove relocation for its own reasons, and thus set out the limits of what the contract requires of these parties.*  [The dealer] agreed to operate at the specified location and to request relocation in writing.  *It can point to no portion of this contract creating "reasonable expectations" that GM would grant such requests.*

*Id.* at 878 (emphasis added).

*Hubbard* is directly on point.  Here, the Dealer Agreement states that "[n]o change in location or in the use of Premises . . . will be made without [*GM's*] *prior written authorization pursuant to its business judgment*[.]"  (Ex. 1, Dealer Agreement § 4.42 (emphasis added).)  As in *Hubbard*, "[t]hese clauses . . . flatly preclude relocation absent GM's approval[,] [t]he contract does not limit the reasons upon which GM can base its relocation decisions[, and] . . . [Brooks] gave GM the authority to approve or disapprove relocation for its own reasons[.]"  *See Hubbard*, 873 F.2 at 878.  Moreover, like the dealer in *Hubbard*, Brooks "can point to no portion of this contract creating 'reasonable expectations' that GM would grant such requests."  *Id.*  As such, "the implied covenant of good faith and fair dealing does not apply to this relocation dispute as a matter of law."  *See id.* at 876.

### 3. Brooks Failed To Allege Any Facts Supporting Any Other Purported Breaches, And Otherwise Brings Claims That Are Time-Barred.

Brooks also alleges a series of purported "breaches" that supposedly violate the duty of good faith and fair dealing, yet Brooks does not (and cannot) identify any contractual provisions

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

implicating these purported breaches.  Brooks alleges that GM committed a bad faith breach of the Dealer Agreement by advising Brooks to sell its dealership and by refusing to grant Brooks a Chevrolet franchise.   (Compl. ¶ 112.)   These issues are not contemplated in the Dealer Agreement, and it is axiomatic that GM cannot "breach" contract terms that do not exist.

Brooks also alleges that GM committed various "breaches" in 2009 regarding certain remodeling and construction costs.  Even if these allegations had merit – and they do not – any claims based on them are precluded by Michigan's six-year statute of limitations for breach of contract.  *See, e.g.*, M.C.L. § 600.5807(9); *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, P.C. v. Bakshi*, 483 Mich. 345, 771 N.W.2d 411 (2009).  Brooks demanded mediation and filed its complaint in 2018, so all breach of contract claims arising before 2012 are time-barred.

### E.   All Claims Asserted By BLP Should Be Dismissed.

As to BLP, Counts I-IV should be dismissed in their entirety, and BLP should be dismissed from this litigation.  BLP seeks $300,000 in "damages" because it purportedly lost an "offer" to sell its real estate when GM denied the First APA that Brooks submitted, but BLP fails to state a viable claim for relief.  BLP may not seek relief through Counts I and II of the Complaint because BLP does not have a cause of action against GM under 63 P.S. § 818.12(b)(3) or (5).  BLP was not a party to the First APA, and did BLP not submit to GM any documents concerning the First APA.  Indeed, Plaintiffs concede that the First APA was a proposed transaction between Brooks and Harper, not BLP.  (Compl. ¶ 31.)  BLP was not a party to the First APA.  (Ex. 2.)  Regardless of whether BLP may have been adversely impacted as a distant and indirect result of GM denying *Brooks's* First APA proposal, there was no violation of the Dealer Act *as to BLP*.  Indeed, as the Third Circuit has explained, *even prospective purchasers* (like Harper) do *not* have standing to bring claims under the Dealer Act except in those narrow situations where a specific interest is identified by the statute.  *See Rosado*, 337

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

F.3d at 295-296 (prospective purchase lacks standing under Dealer Act to challenge exercise of right of first refusal, even though this deprived prospective purchaser of the opportunity to purchase the dealership).  Nothing in the Dealer Act addresses the "rights" of third parties like BLP.  BLP simply does not have a claim under the Dealer Act.  Thus, Counts I and II must be dismissed as to BLP

BLP does not have a viable claim under Counts III and IV either.  Count III (tortious interference) fails because BLP does not (and cannot) allege any facts even suggesting that GM had knowledge of BLP's so-called "$1.3 million offer" from "an unrelated third party."  (Compl. ¶ 30.)  In fact, the Complaint does not even identify the third party who supposedly made the offer with which, BLP contends, GM tortuously interfered.  (*Id.*)  Tortious interference is an *intentional* tort.  *See Crivelli*, 215 F.3d at 394.  Without alleging well-pleaded facts that GM knew about BLP's alleged "offer" to sell the real estate, BLP has failed to state a claim for relief in Count III.  Count IV (duty of good faith) requires the existence of a contract.  Because BLP did not have a contract with GM, this claim fails as a matter of law.  *Walkup*, 147 F. Supp. 3d at 363; *Ulrich*, 192 Mich. App. at 197.  In short, BLP has failed to state a viable claim against GM.  Counts I-IV should be dismissed in their entirety.

### F.     Any Claim For Punitive Damages Should Be Dismissed.

The Court should dismiss Plaintiffs' claim for punitive damages.  (Compl., Prayer for Relief.)  "[P]unitive damages are an 'extreme remedy' available in only the most exceptional matters."  *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439 (2005).  "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Feld v. Merriam*, 506 Pa. 383, 395, 485 A.2d 742 (1984) (internal quotations omitted).  "Punitive damages may not be awarded for misconduct which constitutes ordinary negligence[.]"  *Houston v. Texaco, Inc.*, 371 Pa. Super 399, 405, 538

13

A.2d 502 (1988) (internal quotation omitted).  "A defendant acts recklessly when his conduct creates an unreasonable risk of *physical harm* to another[.]"  *Phillips*, 584 Pa. at 189 (emphasis added)); *see also Nykiel v. Borough of Sharpsburg Sharpsburg Police Dep't*, 778 F. Supp. 2d 573, 591 (W.D. Penn. 2011) ("The 'reckless indifference' mental state, required to justify the imposition of punitive damages, is obtained only where the actor knows, or has reason to know, of facts which create a high degree of risk of physical harm to another[.]"  (internal quotation omitted)).  "Punitive damages cannot be recovered in the absence of a legally cognizable injury." *Houston*, 371 Pa. Super at 405.

A claim for punitive damages may be dismissed if the complaint fails to allege facts sufficient to support them.  *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3rd Cir. 2010) (dismissing punitive damages where the plaintiff failed to allege "facts that are suggestive enough to render [his claim] plausible") (modification in original, quoting *Iqbal*, 550 U.S. at 556); *see also Feld*, 506 Pa. at 396 (concluding the trial court erred as a matter of law in submitting punitive damages claim to jury); *Phillips*, 584 Pa. at 191 (no punitive damages recoverable as a matter of law due to absence of facts supporting any evil motive).  The only claim for which Plaintiffs expressly identify a purported basis for punitive damages is Count III. (Compl. ¶¶ 105-108.)  For the reasons set forth above, Count III should be dismissed in its entirety, which would eliminate any claim for punitive damages.  *Houston*, 371 Pa. Super at 405. To the extent they demand punitive damages for their other three claims, Plaintiffs do not allege well-pleaded facts sufficient to state a plausible claim under *Iqbal* or *Twombly*.  An award of punitive damages requires either (1) an evil motive or (2) a reckless act that results in *physical harm*. *See supra*.  There is no suggestion of any physical harm (nor could there be), so Plaintiffs are left with "evil motive."  There are no well-pleaded facts even suggesting that GM acted with

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

an "evil motive."   At best, Plaintiffs offer only "labels and conclusions" with "a formulaic recitation of the elements of a cause of action" by claiming that GM engaged in "malicious" acts. (Compl. ¶ 106.)   These conclusory allegations are insufficient to state a claim.   *See Twombly*, 550 U.S. at 555.   Instead, the facts alleged show that GM reviewed a dealership sale and relocation proposal, provided a detailed, four-page letter explaining why it was declining that proposal, encouraged Brooks to submit a new proposal without the relocation component, and then timely approved the second proposal.   (Compl. ¶¶ 43-45, 47, 54-59.)   These facts belie any plausible allegation that GM acted with an "evil motive."   The punitive damages claim should be dismissed.

## V.   CONCLUSION

GM requests that this Court enter an order (a) dismissing all claims alleged by BLP, (b) dismissing all claims alleged by Brooks except the portion of Count II concerning the $150,000 difference between the First APA and Second APA, and (c) dismissing the claims for punitive damages.

October 4, 2018                                      Respectfully Submitted,

DYKEMA GOSSETT PLLC

By: /s/Robert Hugh Ellis
Robert Hugh Ellis, Esq.
*Attorneys for General Motors LLC*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6723
rellis@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2018, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

DYKEMA GOSSETT PLLC

By: /s/Robert Hugh Ellis
Robert Hugh Ellis, Esq.
*Attorneys for General Motors LLC*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6723
rellis@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•400 RENAISSANCE CENTER•DETROIT, MICHIGAN 48243

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BROOKS AUTOMOTIVE GROUP, INC. *formerly known as* BROOKS OLDSMOBILE-CADILLAC-GMC TRUCK, INC., B.L.P. REAL ESTATE, LLC,

Case No. 2:18-cv-00798-AJS

Hon. Arthur J. Schwab

Plaintiffs,

v.

GENERAL MOTORS LLC,

Defendant.

**INDEX OF EXHIBITS**

1.      Dealer Agreement

2.      November 17, 2016 (First) APA

3.      April 19, 2017 Correspondence

4.      June 14, 2017 Correspondence

5.      June 27, 2017 (Second) APA

6.      Real Property Agreement