# Exhibit 4



**Timothy M. Kuhn**
Counsel

General Motors LLC
Legal Staff
400 GM Renaissance Center
Mail Code: 482-026-601
Detroit, Michigan, 48243
Tel 313-665-6626
Fax 313-432-2904
timothy.kuhn@gm.com

June 14, 2017            *Via email only: jdavis@davisanddavislaw.com*

James T. Davis, Esq.
DAVIS & DAVIS
107 East Main Street
Uniontown, PA 15401

      Re:     Brooks Oldsmobile Cadillac Trucking

Dear Mr. Davis:

We have reviewed your June 6th letter to Mr. Buckley. In it, you asked GM to reconsider its decision to decline your client's proposed sale of assets pursuant to an agreement expressly conditioned upon GM's approval to relocate those assets from your client's current location in Connellsville to the proposed buyer's location 14.4 miles away in Belle Vernon. You based your request upon your client's sales volume, GM's relationship with the proposed buyer, and what you claim is inaccurate population data in GM's April 19th letter.

As you may know, Mr. Buckley called your client on April 19. During that call, Mr. Buckley explained that GM did not object to the sale of assets to the proposed buyer, only the relocation of those assets from Connellsville to Belle Vernon. He also explained that GM could not approve the sale but reject the relocation because Paragraph 3.2 of the asset purchase agreement that your client negotiated and submitted for approval expressly conditioned the asset sale on the relocation. In other words, the proposal, as submitted, required approval of both the sale and the relocation. Regardless of its position on the sale itself, GM declined the proposal based upon its analysis of the relocation's impact on GM's existing dealer network. For this reason, your client's sales volume and GM's relationship with the proposed buyer do not cause GM to revisit its decision regarding your client's proposal.

Nor does your statement challenging our population data cause GM to revisit its decision. Putting aside the population trends of the individual township where the proposed buyer's operations are located, GM explained that your client's proposal, if approved, would have added a seventh GMC dealership to the Pittsburgh MDA. Thus, GM had to analyze the relocation aspect of your client's proposal based upon its impact on the GMC market for the entire Pittsburgh metropolitan area, not simply Rostraver Township. The data upon which GM relied accurately reflects population trends in the Pittsburgh market. We stand by that data.

Mr. Davis
June 13, 2017
Page 2

GM also stands by what Mr. Buckley told your client when they spoke on April 19 and again on May 16: GM will review in good faith a new proposal from your client to sell his Buick and GMC assets to a qualified buyer. Please note, however, that GM assesses dealer proposals as they are submitted—approving or rejecting them in their entirety. If your client were to submit another asset purchase agreement expressly conditioned upon the relocation of the assets, GM will have to evaluate both the proposed buyer's qualifications and the impact of the proposed relocation on GM's existing dealer network.

If you have any questions or would like to discuss these issues further, please do not hesitate to call or email me. In the meantime, I have attached a copy of the General Motors Dealer Sales and Service Agreement that you requested.

Sincerely,

*[signature]*

Timothy M. Kuhn
Counsel

Attachment

cc: Regis Buckley, Regional Director – Buick GMC Sales & Service
    Mike Mozingo, Regional Director – Business Operations
    Paul Bottiglieri, Regional Network Manager
    Steven Burns, Zone Manager
    Dealer Contractual Group