# Exhibit 5

# ASSET PURCHASE

THIS AGREEMENT, made and entered into this _27_ day of _June_ 2017, by and between John Brooks, Brooks Automotive Group, a Pennsylvania Corporation, having its principal place of business at 2401 Memorial Blvd., Connellsville, Pennsylvania 15425, hereinafter referred to as "SELLER"

A

N

D

Casey Harper and C Harper Holdings, Inc., d/b/a C Harper Autogroup, a Pennsylvania Corporation, and /or is successors and assigns, having its principal place of business at RTS 51 & 70 Belle Vernon, Pennsylvania 15012, its successors and/or assigns, hereinafter referred to as "BUYER"

WITNESSETH:

WHEREAS, Buyer wishes to acquire, and Seller wishes to sell, as an ongoing business concern, certain assets of its GMC and Buick automobile dealership operated by Seller as John Brooks, Brooks Automotive Group, in 2401 Memorial Blvd., Connellsville, Pennsylvania, hereinafter referred to as the "dealerships".

AND NOW, THEREFORE, in consideration of the mutual covenants contained herein, and intending to be legally bound hereby, the parties mutually agree as follows:

**Section 1.** PURCHASE AND SALE OF ASSETS

1.1 **Sale of Assets.** Subject to the provisions of this agreement, Seller agrees to sell, and Buyer agrees to purchase at the closing (as defined in section 1.4 hereof), certain assets of Seller as described below:

(A) The assets of Seller to be sold to and purchased by Buyer under this agreement are hereunder sometimes referred to as the "subject assets" and include all new vehicles manufactured in the year 2016 or thereafter with titles within the inventory of the Seller as of the closing, all of Seller's new and unused vehicle owner lists, service lists, and other records (with the exception of seller's minute books, seal and other records that do not relate to the subject assets being transferred herein), "Subject assets" also shall include the GMC and Buick dealership franchises and/or similar interests held and assignable by Seller.

(B) All parts shall be transferred by the Seller to the Buyer.

1.2 **Limited Assumption Of Liability.** Buyer shall not assume any of Seller's obligations, liabilities, and/or payables.

On the closing date, Seller shall assign to Buyer and, subject to the following, Buyer shall assume and indemnify and hold harmless Seller therefrom, all rights and obligations of Seller arising out of any contracts for the sale and purchase of new GMC and Buick motor vehicles to be delivered on or after the effective date. The motor vehicle contracts to be assigned to and assumed by Buyer as of the effective date shall be listed in a separate written schedule to be agreed upon, delivered and signed by the parties hereto on the closing date. The obligation of Buyer to assume the motor vehicle contracts shall be subject to the following express conditions precedent:

(A) Seller must assign and pay in full to Buyer on the effective date, all customer deposits relating to such motor vehicle contracts as set forth in Exhibit "C" attached hereto and incorporated herein (the "customer deposits"); and
**(B)** All such motor vehicle contracts must provide for a reasonable gross profit.

**Other contracts:**

On the closing date, Buyer shall assume the obligation to purchase and pay when due, any amounts relating to motor vehicles, parts and accessories which have been ordered by Seller in the ordinary course of business prior to the effective date, but which have not been delivered to Seller as of the effective date and which are not otherwise included among the subject assets as well as the current lease in effect on the CDK Computer system currently being used by the Seller. Buyer shall attempt to have all such motor vehicles invoiced to GMC and Buick. Buyer does not assume and shall not assume any debt, or other obligation, or contract or lease, or any other liability whatsoever, including tax liabilities of Seller of any kind or nature, absolute or contingent, known or unknown, incurred or arising out of transactions occurring prior to the effective date, including, without limitation, any dealer sale and/or trading arrangements whether based upon a written or oral agreement of Seller, or otherwise, except as specifically set forth hereinbefore. Without limiting the generality of the immediately preceding sentence, the debts, obligations and liabilities retained by Seller shall include, without limitation, and Seller shall indemnify and hold harmless the Buyer with respect to all claims by any person or entity arising out of any debt, obligations and liabilities of Seller not specifically assumed by Buyer as specifically set forth hereinbefore.

1.3 **Purchase Price and Payment.** In consideration of the sale by Seller to Buyer of the subject assets. Buyer agrees to pay to Seller Six Hundred Thousand ($600,000.00) dollars (the purchase price"), for **blue sky**.

The purchase price shall be paid as follows:

{D0178931.1}2

(A) The parties acknowledge that five thousand ($5,000.00) dollars shall be paid as hand money (the "hand money") upon the signing of this agreement, said sum to be held in a non-interest-bearing escrow account by James T. Davis, Esquire, who shall serve as escrow agent;

(B) The balance of the purchase price of approximately Five hundred and Ninety-five Thousand ($595,000.00) dollars, and payment of any third party obligations shall be paid at the closing as set forth herein.

1.4 **Time and Place of Closing.** The closing of the purchase and sale provided for in this agreement (hereinafter called the "closing") shall be held within thirty (30) days (or as soon thereafter as can be conveniently done) after approval from General Motors officials of the Buyer to operate the business previously conducted by the Seller as GMC and Buick dealerships at the dealership premises (the "GMC and Buick approval'). Within ten (10) business days of Buyers' receipt of such approval, the exact date, place and time of the closing (the "closing date") shall be fixed by mutual agreement of the parties hereto.

1.5 **Transfer of Subject Assets.** At the closing, Seller shall deliver or cause to be delivered to Buyer good and sufficient instruments of transfer in form and substance satisfactory to the Buyer, transferring title to all subject assets free and clear of all liens, claims, charges, restrictions and encumbrances whatsoever (collectively, "liens"); provided that to the extent necessary to fully release and satisfy and such liens as may still exist as of the closing, portions of the purchase price otherwise payable thereof shall be paid directly from such closing to the creditor or other lien holder involved, whereupon the requirements of this section 1.5 shall be deemed to have been complied with.

1.6 **Delivery of Records.** At the closing, Seller shall deliver or cause to be delivered to Buyer all of Seller's records and all other data relating to the subject assets which shall include, but no be limited to, physical, digital, and electronic records (except invoices and other records necessary to enable Seller to pay any of its liabilities).

Section 2. REPRESENTATIONS AND WARRANTIES OF SELLER.

2.1 **Making of Representations and Warranties.** On the date hereof and again at the closing, Seller makes those representations and warranties to the Buyer that are contained in this section 2 below, which representations and warranties shall survive the closing.

2.2 **Title to Properties and Liens.** Seller has good and marketable title to all of the subject assets. None of such subject assets is subject to any mortgage, pledge, lien, conditional sales agreement, security interest, encumbrance, claim or other charge. In this connection, Seller warrants that it will obtain from its floor plan lender, the file at

the closing date or as soon as possible (and in all events within ten (10 days after the closing date) termination statements (forms UCC-3), with respect to the motor vehicle inventory.

2.3 **Permits.** Seller holds all licenses, permits and franchises necessary to conduct Seller's automobile business.

2.4 **Compliance with Applicable Laws**. The subject assets do not violate any applicable law or governmental regulation, nor does the operation of Seller's automobile business with the subject assets violate any applicable law or governmental regulation.

2.5 **Payment of Taxes.** Except as otherwise disclosed in Exhibit "F" attached hereto and incorporated herein, Seller has duly filed all federal, state, and local tax returns and other tax returns of every kind and description, and there are presently no claims for tax deficiencies pending against Seller by any taxing authority, nor does Seller know of any basis for the making of any claim by any taxing authority for any tax deficiency against Seller. Except as otherwise disclosed in Exhibit "F" attached hereto and incorporated herein, Seller further warrants and represents that all of its tax returns have been filed when due and in accordance with generally accepted accounting principles and that it has disclosed all material facts regarding its business to Buyer. Buyer will have no liability of any nature whatsoever accruing under or related to any debt of Seller including, but not limited to, federal, state and local taxes and unemployment contributions to the Commonwealth of Pennsylvania.

2.6 **Litigation.** Except as otherwise disclosed in Exhibit "F" attached hereto and incorporated herein, there is no litigation, suit, claim or governmental investigation pending or threatened against Seller of affecting the subject assets, or any basis therefore known to Seller.

2.7 **Trade Secrets and Confidential Information.** Seller is not using or in any way making use of any confidential information or trade secrets of any third party.

2.8 **Finder's Fee.** Seller has not incurred or become liable for any broker's commission of finder's fee relating to or in connection with the transactions contemplated by this agreement.

2.9 **Liabilities.** As of or immediately following the closing (and the payoff of any creditors and/or other lien holders directly from the purchase price of any amounts that remain owing to them as of the closing pursuant to section 1.5 hereof), Seller will have no liabilities that will constitute a lien or encumbrance on the subject assets, except for those miscellaneous leases listed in Exhibit "D" which Buyer agrees to assume.

2.10 **Corporation**. Seller is a corporation duly organized and in good standing under the laws of the Commonwealth of Pennsylvania and has the corporate power and authority to enter into this agreement and to carry out the transactions contemplated hereby. All corporate or other steps and proceedings have been taken that are

{D0178931.1}4

necessary to properly execute this agreement on the part of the Seller. the execution, delivery and performance of this agreement will not (a) violate any provision of the articles of incorporation of by-laws of Seller, of (b) violate any provision of any agreement, order, judgment or decision to which Seller is a party or by which it is bound.

2.11 **Default.** Except as otherwise disclosed in Exhibit "F" attached hereto and incorporated herein, Seller is not in default under any of its agreements, leases, or other commitments to which it is a party.

2.12 **Insurance.** All of the subject assets are covered by insurance to an extent that is commercially reasonable under the circumstances, with all of such insurance policies to remain in full force and effect between the date of the execution of this agreement and the closing date, at the cost and expense of Seller.

2.13 **Material Facts.** Neither this agreement not any statement, list, certificate of information furnished, or to be furnished, to the Buyer pursuant thereto or to any of the transactions hereby contemplated contains any untrue statement of a material fact, or omits to state a material fact necessary in order to make the statements contained herein and therein, in light of the circumstances in which they are made, not misleading.

2.14 **Insolvency.** No insolvency proceedings of any character, including without limitation, bankruptcy, receivership, reorganization or arrangement with credit, voluntary or involuntary, affecting the Seller or any of its assets and property, are pending or threatened, and the Seller has not made any assignment for the benefit of creditors, and has not taken any other action with a view to, or which will constitute the basis for the institution of such insolvency proceedings.

2.15 **Legal Compliance.** Except as otherwise disclosed in Exhibit "F" attached hereto and incorporated herein, the Seller is not in violation of any term or provision of any charter, bylaw, mortgage, indenture, contract, agreement, instrument, judgment, decree, order, statute, rule or regulation, and the execution and delivery of and performance and compliance with this agreement will not result in any violation or breach of such charter, bylaws or any provisions of any such contract or other instrument to which the Seller is a party, or result in the creation of any mortgage, lien, encumbrance, or charge on any of the properties of assets of the Seller pursuant to any such term or provision.

2.16 **Inventories.** The inventories of vehicles being transferred hereunder shall be new, unused, undamaged, not obsolete and saleable at regular prices in the ordinary course of business. Each vehicle must have been manufactures in the year 2016 or thereafter.

2.17 **Contracts.** The Seller is not a party to any contract, agreement or other arrangement affecting its business which is unusual in nature, duration or amount.

2.18 **Labor Matters.** There is no labor union representing the employees of the Seller and there are not labor disputes pending with respect to the Seller.

2.19 **Status Quo.** Between January 1, 2016 and the date hereof, the Seller has not:

(I) Incurred any obligations or liabilities, absolute, accrued, contingent or otherwise, except current liabilities incurred in the ordinary course of business;

(II) Mortgaged, pledged, subjected to lien, charge, or encumbrance, or granted a security interest in any of its assets to be sold to Buyer.

2.20 **Intellectual Property.** There is no claim against the Seller or other reason to believe that it is or may be infringing on or otherwise acting adversely to the rights of any person under or in respect to any patent, trademark, service mark, trade name, copyright, license, or other similar intangible right. The Seller is not obligated or under any liabilities whatsoever to make any payments by way of royalties, fees, or otherwise, to any owner or licensee of or other claimant to any patent, trademark, trade name, copyright, or other intangible asset with respect to the use thereof or in connection with the conduct of its business or otherwise.

**Section 3.** REPRESENTATIONS AND WARRANTIES OF BUYER

3.1 **Making of Representations and Warranties.** On the date hereof and at the closing, Buyer hereby makes the representations and warranties contained in this section 3.

3.2 **GMC Corporation and Buick Approval.** Buyer understands that it must obtain the GMC and Buick approval to operate as a GMC and Buick dealer at buyer's current location and that said approval is required for Seller to transfer or sign its GMC and Buick dealership or GMC and Buick dealerships sales and service agreement to Buyer. This agreement is contingent upon GMC's approval of the transfer of the dealership licenses to Buyer at Buyer's current location. The execution and carrying out of this agreement and compliance with the provisions hereof by Seller are expressly subject to GMC and Buick's rights under the applicable dealer sales and service agreements with Seller.

3.3 **Buyer's Inspection.** Buyer will, prior to the closing, inspect all of the subject assets and Buyer does rely on any representations of Seller or any agent of Seller as to the condition of the assets to be sold to Buyer.

**Section 4.** COVENANTS OF SELLER

4.1 **Conduct of business.** Between the date of this agreement and the effective date, Seller will do the following:

(A) Conduct its business only in the ordinary course, and use its best efforts to preserve its business and its good will.

(B) Refrain from making any agreements/arrangements for any dealer sales and/or trades of cars without the prior written approval of Buyer in each instance.

4.2 **Authorization from Others.** Prior to the closing date, Seller will use its best efforts and fully cooperate with Buyer in obtaining authorizations, assignments, consents and permits of others, if any, required to permit the consummation of the transactions contemplated by this agreement.

4.3 **Breach of Representations and Warranties.** Promptly upon the occurrence of, or promptly upon Seller becoming aware of the impending or threatened occurrence of, any event which would cause or constitute a breach, or would have caused or constituted a breach had such event occurred or been known to Seller prior to the date hereof, of any of the representations and warranties of Seller contained in or referred to in this agreement or in any exhibit or schedule referred to herein, Seller shall give detailed written notice thereof to Buyer and shall use its best efforts to prevent or promptly remedy the same.

4.4 **Consummation of Agreement.** Seller shall use its best efforts to perform and fulfill all conditions and obligations to be performed and fulfilled under this agreement by Seller, to the end that the transactions contemplated by this agreement shall be fully carried out.

**Section 5** CONDITIONS

5.1 **Conditions to the Obligations of Buyer.** The obligations of Buyer under this agreement are subject to the fulfillment, prior to or on the closing date, of the following conditions any or all which may be waived in whole or in part only by the Buyer in a writing signed by Buyer:

A. The Seller shall have performed and complied with all agreements and conditions on its part required by this agreement, including the provision of those schedules, lists, materials, and information as re referenced herein.

B. The representations and warranties of the Seller shall have been true, complete and accurate and the information provided by the Seller to the Buyer, both orally and in those schedules, lists and materials referenced herein shall have been true, complete and accurate.

C. There shall not have been any damage, destruction or loss, whether or not covered by insurance, materially or adversely affecting the transferred assets.

D. The validity or legality of all actions, proceedings, instruments, and documents required to carry out this agreement of incidental thereto, and all other related legal matters, shall have been approved by Buyer's legal counsel, and there shall have been furnished to such counsel by the Seller such corporate and other records of the Seller as they may have requested for such purpose.

E. The Buyer shall receive the written binding GMC and Buick approval from GMC and Buick officials for Buyer to operate as a GMC and Buick dealership the business previously conducted by the Seller at Buyer dealership premises.

F. The purchase contingency described in Section 1.1 must be satisfied prior to the closing.

G. All Notices and other requirements of any applicable provision of federal, state or local law shall have been complied with, including but not limited to, the provision by the Seller to the Buyer of such clearance certificates of the department or revenue and department of labor and industry of the commonwealth of Pennsylvania, as may be required in connection with the transfer of subject assets contemplated hereby because of the "bulk" nature thereof.

5.2 **Conditions to Obligations of Seller.** Seller's obligations under this agreement are subject to the fulfillment, prior to or at the closing, of the following conditions: each of the representations and warranties of Buyer contained in section 3 hereof shall be true and correct in all material respects as though made on and as of the closing date, and Buyer shall, on or before the closing date, have performed in all material respects all of its obligations hereunder which, by the terms hereof, are to be performed on or before the closing date.

**Section 6.** TERMINATION OF AGREEMENT PRIOR TO CLOSING.

6.1 **Termination.** At any time prior to the closing date, this agreement may be terminated:

A. By mutual consent of the parties;

B. By either party, if there has been a material representation, breach of warranty, of breach of covenant by the other party, which material representation, breach of warranty of breach of covenant cannot be cured by the party breaching within a reasonable period of time;

C. By Seller, if the conditions stated in section 5.1 have not been satisfied at or prior to the closing date; or

D. By Buyer, if the conditions stated in section 5.2 have not been satisfied at or prior to the closing date.

6.2 **Effect of Termination.** If this agreement shall be terminated prior to closing pursuant to section 6.1, all further obligations of the parties hereunder shall terminate immediately without liability of either party to the other and the five thousand ($5,000.00) dollars hand money immediately shall be returned to Buyer within five (5) business days thereafter. Notwithstanding the foregoing, the parties shall have all other rights and remedies granted to them by law for any terminations under section 6.1 (b), (c) or (d).

In the event that this agreement is terminated as described above, each party will return all papers, documents, and other data furnished to it by or with respect to the other party.

6.3 **Right to Proceed.** Anything in this agreement to the contrary notwithstanding, if any of the conditions specified in section 5.1 hereof have not been satisfied, Buyer shall have the right to proceed with the transactions contemplated hereby, and if any of the conditions specified in section 5.2 hereof have not been satisfied, Seller shall have the right to proceed with the transactions contemplated hereby.

Section 7. RIGHTS AND OBLIGATIONS SUBSEQUENT TO CLOSING.

7.1 **Employee Contracts or Benefits.** It is agreed that the Buyer is assuming no liabilities with respect to any of Seller's employment contracts, individually or through a bargaining unit and Buyer is under no obligations to hire any employee of Seller. Furthermore, Buyer is in no respect assuming liability to any of the employee benefit plans of Seller, Seller to remain solely liable for such plans.

Section 8. AFFIDAVIT OF NO CREDITORS.

If by closing, Seller has paid all its creditors, Seller shall deliver to Buyer a sworn affidavit signed by the president of Seller, that Seller has no creditors, or if all creditors have not been fully paid, Seller shall give Buyer a sworn affidavit signed by the president of Seller indicating the name, address and amount owed to said creditors. In the event that all of Seller's creditors have not been fully paid at or prior to the closing, at Buyer's election, portions of the purchase price sufficient to pay off such creditors in full shall be withheld from the payment thereof otherwise made to the Buyer at the closing and remitted directly to such creditors.

Section 9. INDEMNIFICATION

9.1. **Indemnification by Seller.** Seller agrees to indemnify and hold harmless Buyer from and against, and to reimburse Buyer with respect to, any and all claims, loss, damage, liability, cost and expense, including, without limitation, reasonable attorneys' fees, incurred by reason of or arising out of:

A. A breach of any representation or warranty of Seller contained in this agreement, and/or in any exhibits attached hereto:

B. The failure of the Seller to perform any agreement required by this agreement to be performed by it;

C. Failure to comply with the requirements of any applicable bulk transfer laws, whether or not waived by the Buyer, to the extent that the same shall be applicable; or

{D0178931.1} 9

D. Any claims, liabilities, obligations, damages, costs and expenses claimed or demanded by third parties against the Buyer arising out of or resulting from the Seller's, and/or any other person's or entity's operation, use and/or acquisition or disposition of the dealership, the dealership premises and/or the subject assets to and including the closing date, or any acts or omissions of the Seller or any other such person or entity, or any of its/his/her/their agents or employees, including but not limited to, those of any taxing authority or of any entity charged with the enforcement of the fair labor standards act or similar state statutes.

The Buyer shall have a right to set-off against any amounts of the purchase price, as well as any property, cash or assets of Seller which the Buyer may have in its possession or control, the full amount of any loss, damage, liability, costs and expense, including reasonable attorneys' fees, incurred by reason of or arising out of any of the events referenced in this section 9; provided, however, that the Buyer's rights under this section 9 or otherwise in this agreement or by law shall in no way be limited by the right to set-off referenced above.

9.2 **Indemnification by Buyer.** Buyer agrees to indemnify and hold harmless the Seller from and against, and to reimburse Seller with respect to, any and all claims, losses, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees incurred by reason of or arising out of:

A. A breach of any representation or warranty of Buyer contained in this agreement, and/or in any exhibits attached hereto;

B. The failure of Buyer to perform any agreement required by this agreement to be performed by it; or

C. Any claims, liabilities, obligations, damages, costs and expenses claimed or demanded by third parties against the Seller and arising out of or resulting from Buyer's operation, use and/or acquisition or disposition of the dealership, the dealership premises, or the subject assets following the closing date, or any act or omission of the Buyer or any of its agents or employees following the closing date, including but not limited to, those of any taxing authority or of any entity charged with enforcement of the fair labor standards act or similar state statutes, except to the extent that any such claims, losses, damages, liabilities, costs and expenses are caused in whole or part by any act or omission of and/or attributable to Seller.

**Section 10.** MISCELLANEOUS.

10.1 **Fees and Expenses.** Except as otherwise stated to the contrary herein, each of the parties will bear its own expenses in connection with the negotiation and consummation of the transactions contemplated by this agreement.

10.2 **Law Governing.** This agreement shall be construed under and governed by the laws of the Commonwealth of Pennsylvania.

10.3 **Articles and Other Headings.** Article, paragraph, and other headings contained in this agreement are for reference purposes only and shall not affect in any way the meaning of interpretation of this agreement.

10.4 **Counterpart Execution.** This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

10.5 **Gender.** All personal pronouns used in this agreement shall include the other genders whether used in the masculine or feminine or neuter gender, and the singular shall include the plural whenever and as often as may be appropriate.

10.6 **No Oral Modification.** This agreement cannot be modified unless in writing and signed by the parties hereto.

10.7 **Entire agreement.** This agreement represents the complete understanding of the parties hereto and supersedes any prior written or oral agreements regarding the subject matter contained herein.

10.8 **Parties in interest.** All the terms and provisions of this agreement shall be binding upon and be enforceable by, the parties hereto and their respective successors and assigns.

10.9 **Seller's Name.** Buyer understands that he is not purchasing the name of Seller.

10.10 **Notices.** All notices, requests, demands, directions, and other communications under the provisions of this agreement shall be in writing and shall be sent by first class, or first class express mail, certified with return receipt requested, or by hand, in all cases, with charges prepaid, and any such properly given notice shall be effective when received or when such delivery is refused.

All notices shall be sent:

If to John Brooks:
2401 Memorial Blvd
Connellsville, PA 15425

With a copy to:
Regis Buckley

Dan Adamcheck

If to Buyer
Routes 51 &70
Belle Vernon, PA 15012

With a copy to:
James T. Davis, Esquire
107 East Main Street
Uniontown, PA 15401

10.11 **Uniform Tax Treatment.** The parties agree that the allocation of the consideration among the transferred assets shall be done in accordance with Exhibit "H" attached hereto and incorporated herein as determined by the Buyer in accordance with the applicable rules and regulations of the internal revenue

service with determination shall be final and binding on the parties hereto. in preparing and filing IRS form 8594 ("asset acquisition statement under section 1060"), Seller and Buyer shall report that the allocation of consideration set forth herein, and the fair market value of the assets to which such consideration is allocated in the same for each. Prior to filing form 8594, with respect to the transaction described herein, Seller and Buyer shall provide to one another, a true and correct copy of form 8594 which each intends to file with respect to this transaction.

10.12 **Assignment.** Seller may not assign/delegate any of its rights/obligations under this agreement without the prior written consent of the Buyer in each instance, which consent may be withheld in the sole discretion of Buyer, and any such attempted assignment with such prior consent of Buyer shall be considered a material breach of this agreement and null and void ab initio. notwithstanding the foregoing, Buyer may assign/delegate any of its rights/obligations under this agreement to any person or entity Buyer may designate in its sole discretion, whereupon the original Buyer shall no longer be bound by the provisions hereof, responsibility of which shall be fully assumed by the assignee involved, the parties hereby agreeing that any such assignment shall constitute and be deemed to be a novation for all purposes.

In witness whereof, and intending to be legally bound hereby, the parties have hereunto set their hands and seals the day and year first above written.

Attest:                                           Seller:

                                                  Brooks Automotive Group, Inc.

_____                         _____
Secretary                                         By: John Brooks, Individually and as
                                                  President


                                                  Buyer: Casey Harper and C Harper
                                                  Holdings, Inc., d/b/a C Harper Autogroup

                                                  _____
                                                  By: Casey Harper, Individually and as
                                                  President