# Exhibit 6

# SALES AGREEMENT

MADE this ___30___ day of _June__, 2017.

BETWEEN, B.L.P. Real Estate, LLC, 932 St. Clair Way, Suite #2 Greensburg, Pennsylvania, hereinafter referred to as "**Seller**",

AND

Casey Harper and C. Harper Holdings, Inc. and/or it Successors and Assigns, Route 51 & I 70, Belle Vernon, PA 15012, hereinafter referred to as "**Buyer**".

THE PARTIES HERETO, with the intent to be legally bound, do hereby agree, covenant and represent as follows:

1. **SALES AND PURCHASE.** The Seller shall hereby agree to sell and convey to the Buyer, who hereby agree to purchase all that certain piece or parcel of ground with the buildings and improvements thereon erected, known as Memorial Blvd., Connellsville, Bullskin Township, Fayette, PA, more particularly bounded and described in that deed to the Seller recorded in the Recorder of Deeds Office of Fayette County, Pennsylvania, in Record Book Volume 3041, page 847. Identified further as Tax Map # 04-31-0037.

2. **PURCHASE PRICE.** The purchase price or consideration shall be ONE MILLION and 00/100 ($1,000,000.00) Dollars.

The Buyer herein agree to pay to the Sellers, receipt whereof is hereby acknowledged, the amount of FIVE THOUSAND and 00/100($5,000.00) Dollars hand money to be held in escrow by Davis & Davis, Attorneys at Law, and to be applied to the sales price in the event of the consummation of the within sale.

{D0186951.1}D0001080.3

Settlement for the within Agreement shall be made on or before the 45th day from the within agreement, or may be extended upon the mutual written agreement of the parties. The Buyer shall pay the balance of the sales price at the time of settlement.

3. **NOTICES AND ASSESSMENTS.**

A. Seller represents, as of the approval date of this Agreement, that no public improvements, condominium or home owner association assessments have been made against the premises which remain unpaid and that no notice by any government or public authority has been served upon the Seller or anyone on the Seller behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected unless otherwise specified herein.

B. If required by law, Seller shall deliver to the Buyer on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, housing, building, safety or fire ordinances.

C. Seller shall be responsible for any notice of improvements or assessments received on or before the date of Seller's approval of this Agreement, unless improvements consist of sewer or water lines not in use.

D. Buyer shall be responsible for any notice served upon Seller after the approval date of this Agreement and for payment thereafter of any public improvements.

4. **TITLE AND COSTS.**

A. The premises are to be conveyed free and clear of all liens, encumbrances

and easements, excepting, however, the following: existing building restrictions, ordinances, easements of roads, easements visible upon the ground, privileges or rights of public service companies, if any; otherwise the title to the above described real estate shall be good and marketable or such as will be insured by a reputable title insurance company at the regular rates.

B. In the event the Seller is unable to give a good and marketable title, or such as will be insured by a reputable title company, subject to the aforesaid, Buyer shall have the option of taking such title as the Seller can give without abatement of price or of being repaid all monies paid by Buyer to the Seller on account of the purchase price and the Seller will reimburse the Buyer for any costs incurred by the Buyer for those items specified in paragraphs below; and in the later event, there shall be no further liability or obligation on either of the parties hereto and this Agreement shall become null and void and all copies shall be returned for cancellation.

C. The Buyer shall pay the following:

1. The premium for any and all title search, title insurance, or cancellation of same.

2. The premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any.

3. Appraisal fees and charges paid in advance to mortgagee, if any.

4. Buyer's normal settlement cost and accruals.

5. Any survey or surveys which may be required by a title company or abstracting attorney for the preparation of an adequate legal description of the premises shall be

{D0186951.1}D00001080.3

secured and paid for the by the Seller. However, any survey or surveys desired by the Buyer or required by its mortgagee shall be secured and paid for by the Buyer.

5. **FIXTURES, ETC.** All existing plumbing, heating and lighting fixtures, including chandeliers and systems appurtenant thereto, and forming a part thereof, along with all built in appliances/infrastructure and equipment located upon the premises at the time of signing the within document and other permanent fixtures, and landscaping, now in or on the property, if any, unless specifically excepted in this Agreement, are included in the sale and purchase price. None of the above mentioned items shall be removed by the Seller from the premises after the date of this Agreement. Seller hereby warrants that it will deliver good title to all of the articles described in this paragraph and that these items are all in working order.

6. **DEPOSIT AND RECOVERY FUND.** Deposit or hand money shall be paid to Davis & Davis, Attorneys at Law, who shall retain the same until consummation or termination of this Agreement in conformity with all applicable laws and regulations.

7. **POSSESSION AND TENDER.** Possession is to be delivered with the building in a clean fashion, free of debris at the day and time of settlement. Buyer reserves the right to make a pre-settlement inspection of the subject premises.

8. **REAL ESTATE TAXES AND BENEFIT ASSESSMENTS.** Real estate taxes shall be apportioned as of the date of closing. Further, Seller agrees to promptly forward to the Buyer any tax statements issued by the taxing authorities which they may receive after date of settlement. Further, all utilities shall be terminated in the Seller's name as of the date of closing and assumed by the Buyer thereafter.

9. **FINAL SETTLEMENT.** If the Buyer and the Seller discharge all of their obligations hereunder, Seller shall convey good and marketable fee simple title to the Buyer by deed of Special Warranty. Seller shall be responsible for the preparation of the necessary deed for the ultimate transfer under the within Agreement. All realty transfer taxes shall be paid by the Buyer and the Seller equally, 1% each.

10. **MAINTENANCE AND RISK OF LOSS.**

   A. Seller shall maintain the property including all items mentioned in the within Agreement and any personal property specifically scheduled herein in its present condition, normal wear and tear excepted.

   B. Seller shall further bear the risk of loss from fire or other casualties until time of settlement. In the event of damage to any property included in this sale by fire or other casualties, not repaired or replaced prior to settlement. Buyer shall have the option of rescinding this Agreement and receiving all monies paid on account or of accepting the property in its then condition, together with the proceeds of any insurance recovery obtainable by the Seller. Buyer is hereby notified that it may insure its equitable interest in this property as of the time of acceptance of this Agreement.

11. **SEWAGE SYSTEM.** The within property is not serviced by a community wide sewage system.

12. **ASSIGNMENT.** This Agreement shall be binding upon the parties, their respective heirs, personal representatives, guardians, and successors, and to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that the Buyer shall

{D0186951.1}D0001080.3

not transfer or assign this Agreement without the written consent of the Seller.

13. **ENTIRE AGREEMENT.** This Agreement contains the entire Agreement between the Seller and the Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. The provisions of this Agreement supersede any and all prior writings between the parties. Any changes or additions to this Agreement must be made in writing and executed by the parties hereto.

14. **BUYER'S INSPECTION.** Buyer acknowledges that it has inspected the premises and accepts same in its present condition, and Seller shall not be responsible for any alterations and/or repairs to the premises. Buyer further acknowledges that it is not relying on any representations made by Seller regarding the premises and is accepting the property "as is".

15. **TIME OF THE ESSENCE.** Time is hereby declared to be of the essence for this Agreement.

16. **LAW GOVERNING.** The within Agreement shall be governed under the laws of the Commonwealth of Pennsylvania.

**NOTICE: THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. (This notice is set forth pursuant to Act No. 255, approved September 10, 1965.)**

**GRANTOR HEREBY WARRANTS THAT NO HAZARDOUS WASTE IS PRESENTLY BEING DISPOSED OR HAS EVER BEEN DISPOSED BY THE GRANTOR OR TO THE GRANTOR'S ACTUAL KNOWLEDGE UPON OR WITHIN THE SUBJECT PREMISES. THIS NOTICE IS REQUIRED BY THE ACT OF JULY 7, 1980, P.L. 380.**

IN WITNESS WHEREOF, the parties hereto with intent to be legally bound hereby have hereunto set their hands and seals the day and year first above written.

WITNESS:

_____        _____ (SEAL)
                                        B.L.P. Real Estate, LLC
                                        By: _____
                                        Managing Member

**SELLER**

_____        _____ (SEAL)
                                        Casey Harper

_____        _____ (SEAL)
                                        C. Harper Holdings, Inc.
                                        By: Casey Harper, President

**BUYER**