## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROOKS AUTOMOTIVE GROUP, INC. | : | |
| formerly known as BROOKS | : | |
| OLDSMOBILE-CADILLAC- | : | CIVIL NO. 2:18-CV-00798-MJH |
| GMC TRUCK, INC. and | : | |
| B.L.P. REAL ESTATE, LLC, | : | Hon. Marilyn J. Horan |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GENERAL MOTORS LLC, | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant. | : | |

### PLAINTIFFS' BRIEF IN OPPOSITION TO
### DEFENDANT'S PARTIAL MOTION TO DISMISS

NOW COME Plaintiffs Brooks Automotive Group, Inc. formerly known as Brooks Oldsmobile-Cadillac-GMC Truck, Inc. ("Brooks") and B.L.P. Real Estate, LLC ("BLP") (collectively "Plaintiffs"), by and through their undersigned counsel, and file the within Plaintiffs' Brief in Opposition to Defendant's Partial Motion to Dismiss.

### RELEVANT FACTUAL BACKGROUND

John Brooks has owned and operated General Motors ("GM") automobile dealerships in Connellsville, Pennsylvania since 1985. (Complaint, ¶ 9.) In 1996, Brooks acquired the GM Pontiac, Buick and GMC Truck line-makes. (Complaint, ¶ 10.) In 2009, GM directed Brooks to remodel its dealership facilities at 2401 Memorial Boulevard in Connellsville (the "dealership property") to meet GM's then existing branding requirements. (Complaint, ¶ 13.) GM represented that if Brooks completed the renovations to GM's satisfaction, it would receive substantial monetary benefits through GM's Essential Branding Elements ("EBE") Program. *Id.*

Subsequently, GM filed for bankruptcy, shut down its Pontiac line and terminated Brooks' Cadillac franchise, leaving Brooks with only its Buick and GMC Truck franchises to operate from its newly remodeled dealership property. (Complaint, ¶¶ 14-18.) GM then denied Brooks' request to add a Chevrolet franchise to its dealership property, changed the terms of its floor plan financing and failed to allocate to Brooks a sufficient number of vehicles thereby negatively impacting Brooks ability to earn money under the EBE Program. (Complaint, ¶19-20.)

By the end of 2015, Brooks' allocation of vehicles had diminished by approximately $1,800,000 and its EBE Program earnings had been reduced by approximately forty percent. (Complaint, ¶ 24.) Notwithstanding John Brooks' 30-year business relationship with GM, GM's acts and omissions had the cumulative effect of forcing the Brooks' GM dealerships into an unsustainable financial condition. (Complaint, ¶ 25.)

As a consequence of an August 22, 2016 meeting wherein GM's representatives encouraged John Brooks to sell the Brooks' dealership assets to rectify its financial condition, Brooks reached an agreement of sale with C. Harper Holdings, Inc. d/b/a Harper Autogroup ("Harper"). (Complaint, ¶¶ 26-28.) At the time, Harper was well-known to GM as it owned and operated several GM franchises, including Chevrolet, Buick and Cadillac at a large campus facility located at 100 Harper Drive, Route 51, Belle Vernon, Pennsylvania (the "Harper Autoplex"). (Complaint, ¶ 28.)

Brooks and Harper entered into a written Asset Purchase Agreement on November 17, 2016, wherein Brooks agreed to sell substantially all of the assets of Brooks' Buick and GMC Truck franchises to Harper ("the November 2016 APA") (Complaint ¶ 31.) It was Harper's intent that upon acquisition of the Brooks' franchises, it would close the Buick franchise and

2

relocate the GMC Truck franchise to the Harper Autoplex. (Complaint, ¶ 29.) Consequently, upon closing on the sale, BLP intended to sell the Brooks' dealership property in Connellsville to a third-party for $1,300,000 as the facility would no longer be used by Brooks after the sale to Harper. (Complaint ¶ 30.)

Per the terms of the November 2016 APA, closing was conditioned upon GM's approval of the proposed sale to Harper. (Complaint ¶ 32.) Brooks promptly notified and submitted an executed copy of the APA to GM for approval on or about November 18-19, 2016. (Complaint ¶ 33.) Brooks subsequently submitted all required forms with respect to GM's consideration of the proposed sale to Harper on January 9 and 12, 2017. (Complaint ¶ 34.) On January 21, 2017, GM advised Brooks that no additional information was needed. (Complaint ¶ 35.)

Concurrently, Harper and its principal, Casey Harper, initiated their application process by notifying GM of the proposed asset sale on December 15, 2016. (Complaint ¶ 36.) Harper submitted its initial GM Questionnaire application form on January 5, 2017 via facsimile to GM's designated representative – Wannetta Perkins-Hill ("Perkins-Hill"). (Complaint ¶ 37.) (A copy of the initial application form and facsimile to GM dated January 5, 2017 is attached to the Complaint as part of Exhibit "C".) GM responded by providing Casey Harper with a candidate user name and password to access the GM Global Connect System on January 12, 2017. (Complaint ¶ 38.)

On January 20, 2017, Harper notified GM that it had completed all of the electronic application forms and was waiting for GM to provide it with the capital requirements necessary to complete the *pro forma* balance sheet. (Complaint ¶ 39.) Over the course of the next several weeks, GM made multiple requests to Casey Harper and/or Harper for additional information relative to GM's application and approval process, including a criminal background check of its

120465206_3

existing dealer – Casey Harper.  (Complaint ¶ 40.)  All requested information was provided to GM.  (*Id.*)

On April 19, 2017, GM issued a letter to John Brooks and Brooks, with copies to Harper denying the proposed sale to Harper in accordance with the November 2016 APA ("April 19th denial letter").  (Complaint ¶ 43.)  (A true and correct copy of GM's April 19th denial letter is attached to the Complaint as Exhibit "D".)  GM issued its April 19th denial letter 141 days after Brooks submitted the November 2016 APA and 104 days after Harper submitted its initial application forms.  (Complaint, ¶ 65.)

In its April 19th denial letter, GM specifically stated that it had analyzed the proposal and its impact on the Pittsburgh area GMC Truck dealer network and found that it was "not acceptable to GM."  (Complaint ¶ 45.)  GM further represented that the proposal was "not in the best interest of GM's customers, the GMC brand, or the GMC dealer network" based upon the following five (5) factors relating to the proposed relocation of the Brooks' GMC Truck franchise to the Harper Autoplex:

 (a) GM was concerned that the proposed relocation "may negatively" impact the five (5) existing Pittsburgh GMC Truck dealers' ability to achieve a reasonable rate of return on their dealership investments.

 (b) GM was concerned about the declining population in and around Pittsburgh.

 (c) GM stated that the existing GMC Truck dealerships were providing adequate competition as reflected by performance in the GMC Truck Retail Registration Index.

 (d) GM stated that the proposed relocation would have a negative impact on the existing GMC Truck dealer network because (i) the proposed relocation would not provide for exclusive representation of GMC Truck at the Harper Autoplex; (ii) the proposed relocation would result in the addition of a GMC Truck dealer point into the Pittsburgh Multi Dealer Area ("MDA"); and (iii) the proposed relocation would likely injure the existing GMC Truck customers and dealer network by increasing the distance customers would have to travel for GMC Truck sales and service.

 (e) GM was also allegedly concerned that Harper's proposed forecast of GMC Truck sales was too high.

120465206_3

*Id.* (A copy of GM's April 19th denial letter is attached to the Complaint at Ex. "D".) No additional information was provided to Brooks or Harper by GM in support of its April 19th denial letter.

On June 6, 2017, Harper's attorney requested that GM reconsider its decision. (Complaint, ¶ 46.) GM responded on June 14, 2017, and reiterated that GM did not object to the proposed buyer – Harper, but only to the proposed relocation of the Brooks' GMC Truck dealership to the Harper Autoplex in Belle Vernon. (Complaint, ¶ 47.) (A copy of GM's letter of June 14, 2017 is attached to the Complaint at Exhibit "E".)

As a result of GM's denial, the parties began negotiating and ultimately entered into a new and revised Asset Purchase Agreement for the sale of the Brooks dealership assets on June 27, 2017 (the "June 2017 APA"). (Complaint, ¶ 49.) (A true and correct copy of the June 2017 APA is attached to the Complaint at Exhibit "F".) The substantive terms of the November 2016 APA and the June 2017 APA were essentially identical with two material exceptions: (i) the June 2017 APA no longer contemplated the relocation of the Brooks' GMC Truck dealership to the Harper Autoplex; and (ii) the purchase price for the goodwill value of the Brooks' Buick and GMC Truck dealerships was reduced from $750,000 to $600,000. (Complaint, ¶ 50.)

As a result of GM's denial of the November 2016 APA and to facilitate the June 2017 APA, BLP entered into a Sales Agreement for the sale of the Brooks dealership property in Connellsville to Casey Harper and Harper (the "Real Estate Sales Agreement") for a sale price of One Million Dollars ($1,000,000.00) (Complaint, ¶ 51-52.) (A true and correct copy of the Real Estate Sales Agreement is attached to the Complaint as Exhibit "G").

Upon execution of the June 2017 APA, Brooks and Harper once again sought GM's approval. (Complaint, ¶ 53.)  The June 2017 APA was forwarded to GM on the date it was signed – June 27, 2017. (Complaint, ¶ 54.)

On July 11, 2017, GM, through its designated representative – Perkins-Hill, emailed the required forms to Brooks for signature on behalf of Brooks and Harper. (Complaint, ¶ 55.) The forms were signed and returned to GM on the same day – July 11, 2017. *Id.* On July 12, 2017, Perkins-Hill advised Brooks that GM was in receipt of the forms but that Casey Harper and Harper would have to re-submit all of the other GM application forms, including a second criminal background check authorization for Casey Harper, financials and forecasts as though no prior proposal had ever been submitted.  Perkins-Hill told John Brooks that the process could take up to another 90 days. (Complaint, paragraph 56.)

Through July and August, John Brooks continued to press GM for a decision explaining that the delay was causing additional business losses and was unreasonable in view of the fact that through its June 14th letter, GM had effectively stated that Harper was qualified and approvable and that the June 2017 APA no longer contemplated a relocation of the Brooks' dealerships to the Harper Autoplex. (Complaint, ¶ 57-58) Instead, the dealerships would continue to operate at the existing Brooks' dealership property in Connelsville under Harper's ownership. *Id.*  On September 5, 2017, 70 days after the June 2017 APA was submitted to it, GM approved the revised dealership sales proposal. (Complaint, ¶ 59.)

Finally, on October 23, 2017, almost one year after the November 2016 APA was executed and initially submitted to GM, Brooks closed on the sale of its Buick and GMC Truck dealership assets to C. Harper Buick – GMC Inc. as the assignee of Harper. (Complaint, ¶ 60.) BLP Real Estate also closed on the sale of the Brooks' dealership property to Harper. *Id.*

6

## GM'S MOTION TO DISMISS

In their Complaint, Brooks and BLP assert claims against GM for statutory violations of Sections 12(b)(3) and (b)(5) of the Pennsylvania Board of Vehicles Act (63 P.S. § 818.1 *et. seq.*) (the "Act").  (Complaint, Counts I - II.)  Brooks also presents claims for tortious interference with contract under Pennsylvania common law and a breach of contract claim under Count IV for violation of GM's duty of good faith and fair dealing under the parties' dealer agreement. (Complaint, Counts III and IV.)

GM's motion now seeks to dismiss Plaintiffs' claims on the following grounds:

As to Brooks, GM contends that:

1)    Brooks fails to state a claim for violation of Section 12(b)(5) because GM's denial was not untimely under the language of the Act and/or because Brooks has no right to monetary damages;

2)    Brooks fails to plead adequate facts to support its claim for $850,000 in damages as a result of GM's violation of Section 12(b)(3) of the Act;

3)    Brooks has no claim for tortious interference with contract as a matter of Pennsylvania law; and/or

4)    Brooks has no claim for breach of GM's contractual duty of good faith and fair dealing.

GM also contends that all of BLP's claims should be dismissed because:

1)    BLP cannot state a claim under Sections 12(b)(3) and (b)(5) of the Act as a matter of law because it was not a party to the November 2016 APA; and/or

120465206_3

2)      BLP fails to adequately plead a legally viable claim for tortious interference with contract.[1]

GM also contends that Brooks has failed to allege sufficient facts to support its claim for punitive damages under Count III of the Complaint.

Plaintiffs assert that all of GM's arguments are legally erroneous as the holdings of *Crivelli* and *Rosado* are based upon Section 16 of the Act and are therefore inapplicable to the facts of the case *sub judice*.  63 P.S. §818.16.[2]  For these and other reasons set forth herein, GM's Motion to Dismiss must be denied.

## ARGUMENT

### 1.      Legal Standard of Review.

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the non-movant's well-pleaded averments of fact as true and view all interferences in the light most favorable to the non-moving party.  *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944 (3d Cir. 1985); *Society Hill Civic Asso. V. Harris*, 632 F.2d 1045, 1054 (3d. Cir. 1980).  A motion to dismiss is appropriate only when the movant establishes a clear right to judgment as a matter of law and there exists "no set of facts in support of … [plaintiff's] claims which would entitle him to relief."  *Ford v. Schering-Plogh Corp.*, 145 F.3d 601, 604 (3d. Cir. 1998); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d. Cir. 1991).

---

[1] As BLP Real Estate was not a party to the November 2016 APA nor the dealer agreement, it did not assert a claim under Count III for tortious interference with contract or Count IV for breach of GM's duty of good faith and fair dealing. (*See* Complaint, Counts III-IV.)  Consequently, GM's arguments with respect to BLP on Counts III and IV are not relevant.

[2] Essentially, both *Crivelli* and *Rosado* involved situations where a prospective purchaser was arguing that a manufacturer's exercise of a right of first refusal pursuant to Section 16 of the Act was unreasonable under Section 12(b)(3).  Both cases held that a manufacturer's statutory right of first refusal was separate and distinct from a situation where the manufacturer simply withheld consent to a proposed sale and therefore Section 12(b)(3) did not apply assuming the manufacturer met all of the requirements of Section 16.  Contrary to GM's argument, this case does not involve the exercise of a right of first refusal by GM nor the application of Section 16 of the Act. 63 P.S. §818.16.

8

2.    **The Pennsylvania Board of Vehicles Act.**

As the Third Circuit has acknowledged, the Pennsylvania Board of Vehicles Act is a comprehensive statute that was enacted to level the playing field and regulate the relationships between vehicle manufacturers and dealers, so as to protect the dealer from opportunistic behavior by the manufacturer. *Crivelli v. General Motors Corporation*, 215 F.3d 386, 390-392 (3d. Cir. 2000); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1383 (3d Cir. 1992); *Walker Pontiac, Inc. v. Dept of State, Bureau of Prof. and Oce. Affairs*, 582 A.2d 410, 414 (Pa. Cmwlth 1990). As such, the provisions of the Act transcend and override any contrary provisions contained in the parties' dealer agreement. *Id.*

Section 29 of the Act, expressly provides that "**any person**" who is or may be injured by a violation of a provision of the Act, of [or][3] "**any party to franchise who is so injured in his business or property**" by a violation of this Act, may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction. 63 P.S. §818.29. Contrary to GM's present arguments, the plain language of Section 29 provides standing to persons who are not parties to the dealer agreement to assert claims, including "prospective purchasers" in the context of injury suffered as a result of alleged violations of substantive provisions of the Act. *See Rosado v. Ford Motor Company*, 337 F. 3d 291, 295 (3d. Cir. 2003) (discussing the difference between right of first refusal cases and unreasonably withholding cases) *citing Big Apple BMW, Inc. v. BMW of N. Am., Inc. supra*, 974 F.2d at 1382-83 (3d. Cir. 1992) (wherein the Third Circuit held that a prospective purchaser had standing under the "any person" language of Section 29 as a result of violations of the Act by a manufacturer).

---

[3] The Third Circuit has previously acknowledged that the use of the word "of" instead of "or" in Section 29 is a typographical error. *Rosado*, 337 F.3d 291, 294, n. 1.

3.    **Accepting all well-pled facts in the Complaint as true, Plaintiffs have adequately stated claims against GM under Sections 12(b)(3) and 12(b)(5), along with Brooks' claim for tortious interference with contract under the Pennsylvania common law.**

a.    **Section 12(b)(5).**

Section 12(b)(5) of the Act (63 P.S. § 818.12(b)(5)) makes it unlawful for a manufacturer and/or distributor like GM, to fail to respond in writing to any request for consent to the sale of a franchise within sixty (60) days of receipt of a written request, on the forms, if any, generally utilized by the manufacturer for such purposes and containing the information required.  63 P.S. § 818.12(b)(5).  Although Section 12(b)(5) of the Act provides that this time period may be extended by an additional 15 days if supplemental information is requested by the manufacturer in a timely manner, Section 12(b)(5) expressly states that "**[i]n no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms**."  63 P.S. §818.12(b)(5).

Thus, the plain language of the statute provides that the time period for approval or denial is triggered by the manufacturer's receipt of the initial forms and shall in no event exceed 75 days from the manufacturer's receipt of these initial forms.  *Id.*  To adopt GM's erroneous argument that Section 12(b)(5) is not triggered until the manufacturer is in receipt of all required information, would effectively allow the manufacturer to avoid the requirements of Section 12(b)(5) altogether by postponing the trigger date through multiple requests for additional information.[4]  It would also nullify the last sentence of Section 12(b)(5).  *Id.*

GM's argument is clearly not consistent with the language of Section 12(b)(5) nor the intent of the Act.  In this case, Plaintiffs specifically allege that Brooks submitted the APA to

---

[4] Notably, Section 12.2.3 of the GM dealer agreement provides that GM will notify the dealer of its decision within 60 days after General Motors has received all applications and information reasonably requested by GM.  (*See* Complaint, Exhibit I at p.16.)  This language is obviously different from the above-described requirements of Section 12(b)(5).

120465206_3

GM on November 18-19, 2016 and submitted all required forms on January 9 and 12, 2017. Harper submitted its initial application form on January 5, 2017. GM's April 19th denial letter was not issued until 141 days after Brooks' initial submittal and 104 days after Harper's submittal of the initial application forms. Thus, GM's argument that Brooks did not allege when GM received all required information is misplaced and irrelevant under Section 12(b)(5).[5]

GM alternatively argues that Brooks has no right to monetary damages under Section 12(b)(5) of the Act. This argument appears to be based upon a waiver or election of remedies theory that is totally unsupported by legal authority and flies in the face of Section 29 of the Act which provides, in relevant part, that notwithstanding the terms of the dealer agreement or any waiver, any person or any franchisee may seek monetary damages for violations of the Act. 63 P.S.§818.29. Once GM violated Section 12(b)(5) of the Act by failing to respond in a timely manner and improperly denied the proposed sale in violation of Section 12(b)(3), it is responsible for all damages that followed. *Id.*

The fact that Brooks acted to mitigate its damages and avoid further business losses by negotiating a new sale to Harper that attempted to meet GM's misplaced demands, does not waive Brooks' allowable damages for injury to its business and property. *See* 63 P.S. § 818.29; *see also Gabe Staino Motors, Inc. v. Volkswagen of America, Inc.*, 2005 U.S. Dist. Lexis 7940 (E.D. Pa.) (wherein the District Court allowed Plaintiffs' claims under Section 12(b)(3) to proceed to trial after plaintiffs elected to sell the dealership assets to a third party other than the initial proposed purchaser). GM's argument that Brooks' damages under Section 12(b)(5) are somehow limited only to the time of GM's unlawful delay, is again legally unsupported and in direct contradiction of the language contained in Section 29 of the Act. At the time of the

---

[5] It is also factually misplaced in that Brooks alleges it submitted all required forms on January 9 and 12, 2017.

alleged wrongful conduct, Brooks was also a party to the GM dealer franchise agreement. *See* 63 P.S. § 818.29.

GM's argument that BLP has no claim under Sections 12(b)(3) or 12(b)(5) because it was not a party to the November 2016 APA is equally misplaced for the reasons set forth above. *Id.*

**b.    Section 12(b)(3) of the Act.**

Section 12(b)(3) makes it unlawful for a vehicle manufacturer or distributor to unreasonably withhold consent to the sale of a franchise to a qualified buyer who meets the manufacturer's reasonable requirements for appointment as a dealer. 63 P.S. §618.12(b)(3). In the absence of an exercise of a right of first refusal by GM under Section 16 of the Act (which did not occur in this case), the holdings of *Crivelli* and *Rosado* do **not** apply to Plaintiffs' instant claims under Section 12(b)(3).

In *Gabe Staino Motors, Inc. v. Volkswagen of America, Inc.*, the District Court found that the selling dealer and its president and majority shareholder (Gabe Staino) had standing to seek monetary damages against the manufacturer for violation of Section 12(b)(3). 2005 U.S. Dist. Lexis 7940 *10. The Court in *Gabe Staino Motors* equated the term "unreasonable" to that of "fair dealing and honesty" without "unfair or unreasonable discrimination." *Id.* at *11. Similarly, the Pennsylvania Commonwealth Court has found that "unreasonably" withholding consent to the relocation of an existing dealership under Section 12(b)(4) of the Act, means a failure by the manufacturer to meet standards of good faith and honesty. *Rohrich Cadillac v. Bureau of Prof. Affairs*, 73 A.3d 652, 657 (Pa. Cmwlth. 2013) *citing Gabe Staino Motors, Inc. v. Volkswagen of America, Inc., supra; Atlantic Richfield Corp.*, 500 A.2d 1155, 1160-1161 (Pa. Super. 1985).

Here, Plaintiffs allege that GM's actions in requiring a new facility, and then terminating the Brook's Cadillac and Oldsmobile franchises, placed Brooks in an untenable financial

12

120465206_3

position. GM then refused to allow Brooks to add a Chevrolet franchise to its dealership operations and essentially told John Brooks to sell the Brooks' Buick and GM Truck franchises. GM subsequently denied Brooks' proposed sale to Harper based upon grounds that were manipulated and contrived. Plaintiffs further allege that the reasons set forth in GM's April 19th denial letter were unreasonable, arbitrary and capricious, based upon the specific allegations set forth in Paragraphs 67-75 of the Complaint. *See Rohrich Cadillac, supra*, 73 A.3d at 654-656 (wherein the Court found many of GM's similarly stated reasons to be "unreasonable" under Section 12(b)(4) of the Act). As a result, Plaintiffs claim they suffered damages in excess of $75,000, including $150,000 in Brooks' loss of goodwill and $850,000 in Brooks' operational losses that resulted from GM's violations of the Act. BLP claims that it suffered $300,000 on the loss of the sale of the dealership property had GM not unlawfully denied the November 2016 APA. These damages are warranted under Section 29 and GM cites no legal authority to support its argument that Brooks has a duty to precisely detail its damages in its Complaint.

In this regard, the cases cited by GM in its brief at p. 8. (*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) and *Cleveland v. Rotman*, 297 F.3d 569, 575 (7th Cir. 2002)) both deal with the pleading requirements of Fed. R. Civ. P. 8(a)(2) (relating to pleading facts sufficient to state a claim) and not Fed. R. Civ. P. 8(a)(3) which requires plaintiff to simply set forth a demand for the relief sought. Also contrary to GM's argument, Local Rule LCvR 8 does not require a Plaintiff to set forth specific dollar amounts of unliquidated damages sought in a complaint unless required to establish jurisdiction.[6]

Accordingly, Defendant cannot establish that BLP has no claim as a matter of law and/or that Brooks has not adequately plead a claim for $850,000 in monetary damages under the facts

---

[6] Contrary to GM's argument, this Court in *Travelers Cas. And Sur. Co. v. A.G. Cullen Const., Inc.*, 2008 WL 4816477 *11 (W.D. Pa.) found that a plaintiff had no obligation under Fed. R. Civ. P. 8(a)(3) to plead general monetary damages with specificity as Rule 8(a)(3) requires only an assertion of the nature of the relief sought.

and circumstances alleged in the Complaint. Defendant's motion to dismiss for failure to state a claim or adequately plead damages pursuant to the Act must therefore be denied.

    c.    **Brooks' Tortious Interference Claims under Pennsylvania Common Law.**

Plaintiff Brooks also alleges that Defendant tortiously interfered with the November 2016 APA between Brooks and Harper for the sale of the Brooks' Buick and GMC Truck franchise assets. (Complaint, Count III.)

As the Third Circuit has recognized in applying Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relationship, whether existing or prospective, are:

(1)    the existence of a contractual or prospective contractual relation between the complainant and a third party;

(2)    purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3)    the absence of privilege or justification on the part of the defendant; and

(4)    the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli*, 215 F.3d at 394, n.12, *citing Strickland v. University of Scranton*, 700 A. 2d 979, 985 (Pa. Super. 1997).

Although GM cites to its dealer agreement with Brooks to argue that it had privilege and justification for its actions, it fails to recognize that Plaintiff Brooks has alleged that GM has violated the requirements of Sections 12(b)(3) and (b)(5) of the Act. (Complaint, Counts I and II.) As recognized by the Third Circuit in *Crivelli* and *Big Apple*, *supra*, Plaintiff Brooks may have a legally viable tortious interference claim if GM's conduct was in violation of the Act,

120465206_3

because it would not be "privileged" or "justified." *See Big Apple BMW*, 974 F.2d 1381-82 (providing that a violation of the Act creates a legal basis to assert a claim of improper conduct necessary to support a cause of action for tortious interference with existing or prospective contract).

GM's citation to Section 27(c) of the Act is completely misplaced as that section deals with the factors the Board of Vehicles should consider if a manufacturer **approves** a relocation of an existing dealer or establishment of a new dealer and an adjacent same line-make dealer challenges the manufacturer's approval. *See* 63 P.S. § 818.27.

For all these reasons, GM's motion to dismiss Brooks' claim for tortious interference must be denied.

   d.    <u>**Brooks has stated a claim against GM for breach of its duty of good faith and fair dealing under the parties dealer agreement**</u>

As noted above, only Plaintiff Brooks asserts a claims for breach of GM's duty of good faith and fair dealing under its dealer agreement with GM. Section 17.12 of the Dealer Sales and Service Agreement 2015 ("Dealer Agreement") expressly provides that it is governed by the laws of the State of Michigan. (Complaint, Ex. I, p. 28.) In *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F. 2d 873 (5ᵗʰ Cir. 1989), the Fifth Circuit found that an implied covenant of good faith and fair dealing applies where a party to a contract makes the manner of its performance a matter of discretion. *Id.* at 877. When discretion in the exercise of a contractual provision arises, "the dependent party must rely on the good faith of the party in control." *Id.* As noted by the Third Circuit, "cases such as *Hubbard* … make clear that under Michigan law, such an implied obligation can arise when, for instance, the specific contractual terms make a party's performance under the contract entirely discretionary. *General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, n. 23 (3d Cir., Aug. 27, 2001).

15

Page 1 of the Dealer Agreement states that its purpose is "to promote a relationship between General Motors and its Dealers which encourages and facilitates cooperation and mutual effort to satisfy customers, and permits General Motors and its dealers to fully realize their opportunities for business success." (Complaint, Exhibit I, p. 1.)  The Dealer Agreement further provides that the parties relationship "requires a spirit of cooperation, trust, and confidence between General Motors and its dealers." (*Id.*)

Section 12.2.1 of the Dealer Agreement requires a dealer to provide written notice of any proposed change in ownership. (Complaint, Exhibit I, pp. 15-16.)  Section 12.2.2 provides that GM will consider the Dealer's Proposal taking into account factors such as the business and financial qualifications of the proposed new dealer operator; whether the proposal is likely to result in a successful dealer operation while promoting and preserving competition and customer satisfaction. *Id.* at p. 16.   The Dealer Agreement is completely devoid of what specific information GM will require to be submitted for consideration and/or on what specific grounds GM will rely upon to render a decision on a proposed dealership sale.

As previously found by this Court in *Bowser Cadillac, LLC v. General Motors Corporation, et al*, Civil Action No. 07-1149, 2008 WL 2802523 (W.D. Pa, July 18, 2008) (Judge Fischer), the GM Dealer Agreement does afford discretion to GM and does create a potential claim for good faith and fair dealing under Michigan law. (A copy of Judge Fischer's July 18, 2008 Memorandum Order is attached hereto as Exhibit A.)  Accordingly, the District Court found that a claim for violation of the duty of good faith and fair dealing under the GM Dealership Agreement could proceed past a preliminary motion. *Id.* at p.11.

e.    **Plaintiff Brooks has adequately pled a claim for punitive damages.**

Punitive damages are recoverable pursuant to a tortious interference claim under Pennsylvania law. *Chrestman v. NHB, LLC*, 2007 WL 1575202, *2 (E.D. Pa. May 31, 2007).

16

120465206_3

Indeed, Pennsylvania permits the recovery of punitive damages for tortious interference with contract so long as the interference was committed willfully, maliciously, recklessly or carelessly. *Golden ex rel. Golden v. Golden,* 382 F.3d 348, 356-57 (3d Cir. 2004) (citing *Judge Tech. Servs., Inc. v. Clancy*, 813 A.2d 879, 888–90 (Pa. 2002)) ("The Pennsylvania Supreme Court has discussed with approval Comment b of [the Restatement (Second) Torts § 908(2) (1979) ], which states that '[r]eckless indifference to the rights of others and conscious action in deliberate disregard of them ... may provide the necessary state of mind to justify punitive damages.' "); *c.f., Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) ("punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured").

Here, Plaintiff Brooks has alleged that GM acted in a wanton and reckless manner in denying Brooks' proposed sale to Harper for the reasons stated in its April 19th denial letter. Plaintiff Brooks further alleges that the reasons set forth in the April 19th denial letter were willfully and/or recklessly contrived and manipulated, and were outcome driven and dishonest. (Complaint, ¶¶ 101, 105-106.)   These allegations, if proven, support a claim for punitive damages.  Dismissing the claims at this juncture pursuant to Rule 12 motion would be premature and legally erroneous. *See Young v Westfall*, 2007 WL 675182, *2-3 (M.D. Pa, March 1, 2007) (refusing to dismiss punitive damages claim at 12(b) stage based on complaint alleging cause of action sounding in mere "garden variety negligence" because discovery was necessary to determine whether punitive damages were appropriate in light of allegations that "defendants acted in a reckless manner [and] that their actions were outrageous.").

120465206_3

## CONCLUSION

For the reasons stated herein, GM's partial motion to dismiss must be denied in its entirety.

<div style="margin-left: 50%;">

Respectfully submitted,

DILWORTH PAXSON LLP

</div>

Dated: October 18, 2018

John B. Consevage, Esq.
PA Atty. I.D. No. 36593
Jerry R. DeSiderato, Esq.
PA Atty. I.D. No. 201097
Penn National Insurance Plaza
2 N. 2nd Street, Suite 1101
Harrisburg, PA 17101
Tel.: (717) 213-4105
Fax: (717) 236-7811
jconsevage@dilworthlaw.com
jdesiderato@dilworthlaw.com
*Attorneys for Plaintiffs – Brooks Oldsmobile-Cadillac-GMC Truck, Inc. d/b/a Brooks Automotive Group, Inc. and B.L.P. Real Estate, LLC*

120465206_3

## CERTIFICATE OF SERVICE

I, John B. Consevage, do hereby certify that the foregoing *Plaintiffs' Brief In Opposition To Defendant's Partial Motion To Dismiss* was electronically filed via the ECF system on the date set forth below, and therefore, made available to all counsel of record, as follows:

Robert Hugh Ellis, Esquire
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI  48243
Tel: (313) 568-6723
REllis@Dykema.com
*Attorneys for Defendant*

Dated: October 18, 2018

John B. Consevage, Esq.
PA Atty. I.D. No. 36593
DILWORTH PAXSON LLP
Penn National Insurance Plaza
2 N. 2nd Street, Suite 1101
Harrisburg, PA 17101
Tel.:  (717) 213-4105
Fax:  (717) 236-7811
jconsevage@dilworthlaw.com
*Attorneys for Plaintiffs*