IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

BROOKS AUTOMOTIVE GROUP, INC, )
B.L.P. REAL ESTATE, LLC, )
) 2:18-CV-00798-MJH
Plaintiffs, )
)
vs. )
)
GENERAL MOTORS LLC, )
)
Defendant, )

OPINION AND ORDER

Plaintiffs, Brooks Automotive Group, Inc. ("Brooks") and B.L.P Real Estate, LLC ("BLP"), bring the within action for damages, stemming from circumstances surrounding the sale of Plaintiff, Brooks' Automotive dealership, which sale required approval from Defendant, General Motors, LLC ("GM"). In their June 14, 2018, Complaint, the Plaintiffs assert claims for Violation of Section 12(b)(5) of the Pennsylvania Board of Vehicles Act (63 P.S. § 818.1 *et seq.*) ("BVA")(Count I); Violation of Section 12(b)(3) of the BVA(Count II); Plaintiff, Brooks, asserts a claim for Tortious Interference with Contract (Count III); and Plaintiff, Brooks, asserts a claim Breach of Duty of Good Faith and Fair Dealing (Count IV). (ECF No. 1). Plaintiffs have also made a claim for punitive damages. *Id.*

Pending before the Court is Defendant, GM's, Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon Review of the Complaint (ECF No. 1), Defendant's Partial Motion to Dismiss for Failure to State a Claim and Brief (ECF Nos. 18 and 23), Plaintiff's Response and Brief in Opposition (ECF Nos. 24 and 25), Defendant, GM's, Reply Brief (ECF No. 26), and the arguments of counsel, Defendant, GM's, Partial Motion to Dismiss for failure to state a claim is granted in part and denied in part.

I.  **Background**

The pertinent facts from the pleadings are as follows. John Brooks[1] owned and operated Brooks's Buick and GMC Trucks dealership, a General Motors ("GM") automobile dealership in Connellsville, Pennsylvania since 1985. (ECF No. 1 at ¶ 9). In 2016, John Brooks began exploring the sale of the Brooks's Buick and GMC Trucks dealership assets to potential buyers. *Id.* at ¶ 27. Brooks subsequently began negotiations with C. Harper Holdings, Inc. d/b/a Harper Autogroup ("Harper Autogroup"), who owned and operated several GM dealership line-makes. *Id.* at ¶ 28. In the fall of 2016, John Brooks and Casey Harper agreed that Harper Autogroup would purchase the Brooks's Buick and GMC Truck dealership franchise assets. *Id.* at ¶ 29. As part of the purchase, Harper Autogroup planned to effectively close the Brooks's Buick franchise and consolidate it with Harper's existing Buick franchise in Belle Vernon. Harper also planned to relocate the GMC Truck franchise to the Harper Autoplex. *Id.* at ¶ 29. In conjunction with the sale of the dealership assets to Harper Autogroup, BLP intended to sell its Connellsville dealership real estate to an unrelated third-party. *Id.* at ¶ 30. At that time, BLP had a $1.3 million offer for the sale of that real estate. *Id.* On November 17, 2016, John Brooks, Brooks, Casey Harper and Harper Autogroup entered into a written Asset Purchase Agreement (the "November 2016 APA"). *Id.* at ¶ 31. Said agreement provided that Harper Autogroup would purchase all of Brooks's new vehicles and new parts Inventory and the goodwill value of the Brooks's dealership franchises for $750,000. *Id.*

As required by Brooks' dealer franchise agreement with GM, closing on the sale was conditioned upon GM's approval of the sale to Casey Harper and Harper Autogroup, and upon

---

[1] The Complaint references individual, John Brooks, however, he is not a party to this action. Any amendment of the Complaint should include allegations relating to parties in the case specifics rather than Mr. Brooks, a non-party.

GM's approval of the relocation of the GMC Truck dealership to the Harper Autoplex. *Id.* at ¶ 32. Brooks notified GM of the proposed sale to Harper Autogroup and submitted the November 2016 APA to GM for approval on or about November 18-19, 2016. *Id.* at ¶ 33. Per GM's request, Brooks subsequently submitted a dated copy of the November 2016 APA on December 15, 2016. *Id.* at ¶ 34. In addition, Brooks submitted all required forms for GM's consideration of the proposed sale to Harper Auto group on January 9 and 12, 2017. *Id.* On January 27, 2017, GM advised Brooks that no additional information was needed from Brooks relative to its consideration of the proposed sale to the Harper Autogroup. *Id.* at ¶ 35. Casey Harper and Harper Autogroup initiated their part of the approval process by notifying GM of the proposed asset sale on December 15, 2016. *Id.* at ¶ 36. Casey Harper and Harper Autogroup submitted and completed the initial GM Questionnaire application form on January 5, 2017. *Id.* at ¶ 37. On January 20, 2017, Harper Autogroup notified GM that it had completed all of the electronic application forms, except for the pro forma balance sheet for which Harper needed GM to provide the capital requirements. *Id.* at ¶ 39. Over the course of the next several weeks, GM made multiple requests to Casey Harper and/or Harper Autogroup for additional information relative to GM's application and approval process, including a criminal background check of its existing dealer principal, Casey Harper. *Id.* at ¶ 40. All requested Information was provided to GM. *Id.* During this same period, John Brooks contacted GM on multiple occasions to inquire as to the status of GM's approval process. *Id.* at ¶ 42. John Brooks advised GM that, as word of the proposed sale was becoming known, he was losing customers and key employees, and that he had little inventory to sell. *Id.* Thus, he advised GM that monthly operating losses were mounting. *Id.*

On April 19, 2017, GM issued a letter to Brooks, with copies to Harper Autogroup, advising that GM refused approval of the November 2016 APA.[2] *Id.* at ¶ 43. Although they disagreed with GM's decision, on June 27, 2017, John Brooks, Brooks, Casey Harper and Harper Autogroup entered into a new and revised Asset Purchase Agreement for the sale of the Brooks dealership assets (the "June 2017 APA"). *Id.* at ¶ 49. The substantive terms of the November 2016 APA and the June 2017 APA were essentially the same, with two material exceptions: (i) the June 2017 APA no longer contemplated the relocation of the Brooks' dealership assets to the Harper Autoplex; and (ii) the purchase price for the value of the Brooks' dealerships was reduced from $750,000 to $600,000. *Id.* at ¶ 50.

Because the dealership needed to remain at the Connellsville location, BLP and C. Harper and C. Harper Holdings, Inc. ("Harper Holdings") entered into Sales Agreement for the sale of the Connellsville dealership real estate (the "Real Estate Sales Agreement"). *Id.* at ¶ 51. Through the Real Estate Sales Agreement, BLP agreed to sell the real estate to Harper Holdings for the purchase price of One Million Dollars ($1,000,000.00). *Id.* at ¶ 52. The June 2017 APA was forwarded to GM on June 27, 2017. *Id.* at ¶ 54. On September 5, 2017, GM approved the June 2017 APA. *Id.* at 59.

From these events, Plaintiffs claim the following:

(a) Brooks lost $150,000 on the sale of the goodwill (blue sky) value of its Buick and GMC Truck dealerships to Harper Auto group;

(b) Brooks lost in excess of $850,000 as a direct result of GM's actions in denying the proposed sale to Harper Autogroup through the November 2016 APA and its further delay in processing the June 2017 APA; and

(c) BLP lost $300,000 on the sale of its Connellsville dealership real estate.

---

[2] Plaintiffs do not plead the date when Harper Autogroup submitted the pro forma balance sheet to GM.

4

Id. at ¶ 76.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable

inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

### III. Discussion

#### a. Alleged Violation of Section 12(b)(5) of the Board of Vehicles Act

Count I of Plaintiffs' Complaint alleges that GM violated Section 12(b)(5) of the Board of Vehicles Act ("BVA") because it delayed in responding to a request for consent to the terms of the November 2016 APA. The Third Circuit has described the BVA as follows: "[t]he Pennsylvania Board of Vehicles Act is a comprehensive statute governing the relationship between automobile manufacturers and their franchise dealers." *Rosado v. Ford Motor Co.*, 337 F.3d 291, 293 (3d Cir. 2003). Section 12(b)(5) of the BVA provides as follows:

6

(b) Violations.--It shall be a violation of this act for any manufacturer, factory branch, distributor, field representative, officer, agent or any representative whatsoever of such manufacturer, factory branch or distributor licensed under this act to:

\*\*\*

(5) **Fail to respond in writing to a request for consent as specified in paragraphs (3) and (4) within 60 days of receipt of a written request on the forms, if any, generally utilized by the manufacturer or distributor for such purposes and containing the information required.** The failure to respond within the time period set forth in this paragraph shall be deemed to be approval of the request, and the manufacturer or distributor shall execute and deliver a franchise to the applicant within 30 days of the expiration of this time period. A manufacturer or distributor shall acknowledge in writing to the applicant the receipt of the forms, and, if the manufacturer or distributor requires additional information to complete its review, the manufacturer or distributor shall notify the applicant within 15 days of the receipt of the forms. If the manufacturer or distributor fails to request additional information from the applicant within 15 days after receipt of the initial forms, the 60-day time period for approval shall be deemed to run from the initial receipt date. Otherwise, the 60-day time period for approval shall run from receipt of the supplemental requested information. In no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms.

63 P.S. § 818.12(b)(5)(emphasis added). Considering the timeline of events, as detailed in the Complaint and outlined earlier in this Opinion, there is a lack of clarity in the pleadings as to when the Plaintiffs claim that all forms "generally utilized by the manufacturer or distributor for such purposes and containing the information required" were submitted to GM under Section 12(b)(5). Absent such, it is not clear when Plaintiffs claim that the Section 12(b)(5) timelines began to run. Plaintiffs allege that on January 20, 2017, Harper Autogroup notified GM that it had completed all of the electronic application forms, except for the pro forma balance sheet, for which Harper was waiting for GM to provide it with the capital requirements necessary to complete said pro forma balance sheet. *Id.* at ¶ 39. Plaintiffs claim that the denial by GM was 104 days from January 5, 2017, the date when the initial questionnaire was provided to GM. Id. at ¶¶ 37 and 65. However, the Complaint suggests that, as of January 20, 2017, Harper Autogroup still had not submitted all

7

information on the forms that it was required to provide. Given the absence of specific dates for when the final forms, containing the information required, were submitted, Plaintiffs have not pleaded with sufficient specificity to permit calculation of the deadlines for GM's response under Section 12(b)(5) of the Act. Accordingly, GM's Motion to Dismiss Count I of Plaintiff's Complaint is granted, without prejudice. Plaintiffs will be afforded an opportunity to amend their Complaint as to Count I.

### b. Damages alleged for Violation of Section of 12(b)(3)

Defendant, GM, next argues that the Court should dismiss Count II, in part, because Brooks failed to sufficiently state its claim for $850,000 in unidentified "damages," associated with GM's denial of the November 2016 APA. Under Pennsylvania law, a manufacturer may not:

> (3) *Unreasonably withhold consent* to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth who meets the manufacturer's . . . reasonable requirements for appointment as a dealer.

63 P.S. § 818.12(b)(3) (emphasis added). Rule 9(g) of the Federal Rules requires that "[w]hen items of special damages are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g). Plaintiffs allege that Brooks's sustained $850,000 in "damages" resulting from the rejection of the November 2016 APA. (ECF No. 1 at ¶ 76). However, GM argues that Brooks offers only conclusory assertions that it "lost in excess of $850,000 as a result of GM's actions in denying the proposed sale." GM also argues that Brooks does not allege facts to support its damages assertions or identify any grounds for its purported "loss." *Id.* The Complaint is devoid of specific factual allegations to identify what comprises the $850,000 claim or how such damages relate to the alleged 12(b)(3) violation, i.e. unreasonably withholding consent. Accordingly, GM's Motion to Dismiss Count II, as to Plaintiffs' claimed damages of $850,000, is granted,

without prejudice. Plaintiffs will be afforded an opportunity to amend their Complaint as to the damages alleged in Count II.

### c. Tortious Interference with Contract

GM next argues that Brooks' Tortious Interference with Contract Claim should be dismissed, because GM cannot commit tortious interference by exercising its contractual rights to refuse consent to a dealership sale and proposed relocation. (ECF No. 23 at pp. 8-9). Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000). Pennsylvania has expressly adopted the Restatement (Second) of Torts, which states that a necessary element of this tort is improper conduct by the alleged tortfeasor. *See Adler, Barish, Daniels, Levin & Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175, 1183 (1978); Restatement (Second) of Torts §§ 766-67. In considering whether the conduct is improper, the Restatement also sets forth the following factors to consider when determining whether the interference is improper:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

Restatement (Second) of Torts § 767. The general issue is "whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability,

despite its effect of harm to another." *Adler*, 393 A.2d at 1184 n. 17 (quoting Restatement (Second) of Torts § 767 cmt. b). According to one of the Restatement's comments, the "nature of the actor's conduct is a chief factor" in determining whether the conduct is improper. Restatement (Second) of Torts § 767 cmt. c. Examples of improper conduct include threats of physical violence, fraudulent misrepresentations, threats of unmerited civil or criminal litigation, economic pressure, and unlawful conduct. *See id.* In *Crivelli*, the Third Circuit determined that "GM's decision to exercise its right of first refusal, is not comparable to any of the examples" in the Restatement. 215 F.3d at 395. The Third Circuit further predicted "that the Pennsylvania Supreme Court would conclude that, as a matter of law, the exercise of a right of first refusal by GM did not constitute an improper action within Pennsylvania's tort of intentional interference with a contractual relationship." *Id.* at 395. Presently, GM argues that the right of first refusal in *Crivelli* is analogous to the instant action.

In this case, GM denied approval of the November 2016 sale because of the plan to close the Connellsville truck location. There were no issues concerning any right of first refusual as in *Crivelli*. However, such distinction does not affect the question of whether the alleged conduct of GM, in the circumstances of this case, satisfied the necessary elements for the tort of interference with a contractual relationship. GM and Brooks had a dealer agreement that governed changes in management and ownership. *See* ECF No. 1-10 at p. 14. Any allegations regarding GM's refusal to consent to the November 2016 APA arise from the contractual duties between the parties with regard to changes in management and ownership. The terms of said agreement give GM sole discretion in its business judgment to execute its right to refuse consent to a transfer. Accordingly, the facts, as pleaded, do not constitute improper action sufficient for the tort claimed. Further, Brooks has no legal basis to assert a tort duty where the Dealership Agreement is the gist of the

action. Brooks remedies derive from the contract, and Brooks's remedies derive from a breach of contract action and/or under the Board of Vehicles Act. Thus, GM's Motion to Dismiss Count III is granted, and Count III of Plaintiff's Complaint is dismissed. As the claim for tortious interference with contract is legally insufficient under these circumstances, any amendment to Count III is deemed futile.

### d. Alleged Breach of Good Faith and Fair Dealing

GM next argues that Brooks' claim for Breach of the Duty of Good Faith and Fair Dealing (Count IV) should be dismissed. (ECF No. 23 at p. 9). The parties agree that Michigan law governs the breach of good faith and fair dealing claim. (ECF No. 1 at ¶ 110). Under Michigan law, an implied covenant of good faith and fair dealing can be read into a contract only in certain circumstances. "Generally speaking, the implied covenant seeks to protect the contracting parties' reasonable expectations." *Hubbard Chevrolet v. General Motors Corp.*, 873 F.2d 873 876 (5th Cir. 1989) (applying Michigan law). "Michigan law does not imply the good faith covenant where parties have unmistakably expressed their respective rights." *Id.* at 877 (internal quotations omitted); *see also Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826-27 (6th Cir. 2003) (a court should "decline[] to ascribe a covenant of good faith and fair dealing in the interpretation of a contract to override express contract terms." (internal quotation omitted)).

In *Hubbard*, the Fifth Circuit addressed a relocation dispute between a dealership and GM with regard to an alleged breach of good faith and fair dealing. Just like the Dealer Agreement between Brooks and GM in this case, the dealer and GM agreement in *Hubbard* stated that '[n]o change in Dealership Location . . . will be made without the written approval of General Motors." *Id.* at 877. In *Hubbard*, after GM declined a relocation request, the dealer sued GM claiming a breach of the duty of good faith and fair dealing. *Id.* at 874. On appeal, the

Fifth Circuit held that "the implied covenant of good faith and fair dealing does not apply to this relocation dispute as a matter of law." *Id.* at 876. Further the *Hubbard* Court stated, "[T]he covenant has no role to play in the relocation dispute between GM and [the dealer] . . . These clauses. . . flatly preclude relocation absent GM's approval . . . The contract does not limit the reasons upon which GM can base its relocation decisions. [The dealer] and GM have deferred no decisions regarding relocation or the relevant factors. They gave GM the authority to approve or disapprove relocation for its own reasons, and thus set out the limits of what the contract requires of these parties. [The dealer] agreed to operate at the specified location and to request relocation in writing. It can point to no portion of this contract creating "reasonable expectations" that GM would grant such requests." *Id.* at 878 (emphasis added).

Presently, the Dealer Agreement states that "[n]o change in location or in the use of Premises . . . will be made without [GM's] prior written authorization pursuant to its business judgment[.]" (ECF No. 1-10). As in *Hubbard*, the Dealer Agreement precludes relocation absent GM's approval pursuant its business judgment. The Agreement does not dictate or regulate GM in making its relocation approval decisions; thus, the contract gave GM sole authority to approve or disapprove relocation for its own business judgment reasons. *See Hubbard*, 873 F.2 at 878. Thus, in this matter, applying Michigan Law, the Complaint's allegations fail to state an independent claim for breach of any implied covenant of good faith and fair dealing. Accordingly, GM's Motion to Dismiss, as regards Count IV, is granted, and Count IV of Plaintiffs' Complaint is dismissed. As the claim for Breach of Implied Covenant of Good Faith and Fair Dealing is legally insufficient under these circumstances, any amendment to Count IV is deemed futile.

### e. Standing by BLP

GM next argues that Counts I and II as to BLP, should be dismissed in their entirety because BLP lacks standing. BLP argues that it has standing under Section 818.29 of the BVA, which states:

> Notwithstanding the terms, provisions or conditions of any agreement or franchise or other terms or provisions of any novation, waiver or other written instrument, **any person who is or may be injured by a violation of a provision of this act** [or] any party to a franchise who is so injured in his business or property by a violation of a provision of this act relating to that franchise, or any person so injured because he refuses to accede to a proposal for an arrangement which, if consummated, would be in violation of this act, **may bring an action for damages and equitable relief, including injunctive relief, in any court of competent jurisdiction.**

63 P. S. § 818.29(emphasis added). The BVA defines "person" as, "[a]ny individual, corporation, partnership, association or other entity foreign or domestic." 63 P.S. § 818.2. As regards standing, the issue is whether BLP, who was not a party to any contract with GM and not a prospective purchaser under the November 2016 APA, was a "person," as defined by the BVA. The Third Circuit has commented that the goal of the BVA, and other similar statutes, "is to protect the franchisee who has invested substantial capital in the franchise and who is therefore vulnerable to a manufacturer who may take advantage of this firm-specific investment." *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 390 (3d Cir. 2000). Although the Third Circuit has interpreted the BVA's purpose and legislative intent, it has not yet decided whether the Act extends to confer standing upon a third-party property owner, like BLP. The Third Circuit observed in *Rosado*, "standing depends on whether the plaintiff has suffered a legal injury that the law was designed to protect." 337 F.3d at 293. Further, "[i]t is also clear that standing will be found more readily where protection of the type of interest asserted is among the policies underlying the legal rule relied upon by the person claiming to be aggrieved." *Id.* 293–94. Ultimately, in order to have

standing, a party must have a substantial, immediate and direct interest in the subject matter. *Id.* at 294. The Plaintiff in *Rosado* relied upon section 818.29 of the BVA to grant him standing as a prospective purchaser. *Id.* at 294. In *Rosado*, the Third Circuit held that a prospective purchaser of an automobile dealership does not have standing to challenge the exercise of a manufacturer's right of first refusal. *Id.* In failing to bestow standing in *Rosado*, the Third Circuit signaled a limitation to the application of the "any person" language under Section 818.29 of the BVA. However, the court's refusal to afford standing in *Rosado* was premised on the fact that Section 818.16 of the BVA provides remedies to reimburse a prospective purchaser's expenses, when a dealer exercises its right of first refusal. The Court held that "[a] prospective purchaser lacks standing to claim that the selling dealer did not receive the same or greater consideration under section 818.16." *Id.* at 296.

The present case, however, is distinguishable from *Rosado* in that the November 2016 APA between Brooks and Harper did not concern any right of first refusal under the franchise agreement between Brooks and GM. The present issue concerns whether GM unreasonably withheld consent to the November 2016 APA and thereby violated Section 12(b)(3) of the Act. Under Section 12(b)(3), it is a violation for a manufacturer, like GM, to,

> (3) Unreasonably withhold consent to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth who meets the manufacturer's or distributor's reasonable requirements for appointment as a dealer.

63 P.S. § 818.12(b)(3). Said section does not provide for any specific remedies for third party purchasers or others, who claim harm from a manufacturer's unreasonable refusal of consent. This provision is therefore distinct from Section 818.16, right of first refusal, as in *Rosado*. The distinction is significant to the standing issue for BLP's claim under Section 12(b)(3). The claimant in *Rosado* sought damages under Section 818.29 for a violation of Section 818.16, but

said claimant was not injured because Section 818.16 provided a remedy for that claimant. Here, however, BLP alleges that it suffered injury due to GM's unreasonable refusal to approve the November 2016 APA and permit the proposed truck franchise relocation. Given the broad definition of "person" under Section 818.2 of the Act, Section 818.29 affords standing for BLP to pursue its claim. Accordingly, GM's Motion to Dismiss BLPis denied.

### f. Punitive Damages

Plaintiffs concede that their punitive damages request is limited to Count III of the Complaint, Brooks's Tortious Interference with Contract claim. (ECF No. 25 at pp. 16-17). Accordingly, as Count III of Plaintiffs' Complaint is being dismissed, Plaintiffs' claims for punitive damages are also dismissed, as moot.

### IV. Conclusion

For the reasons stated above, Defendant's Partial Motion to Dismiss (ECF No. 18) pursuant to Fed. R. Civ. P. 12(b)(6) is granted in part and denied in part. Defendant's Motion to Dismiss Count I, violation of Section 12(b)(5) of the BVA, is granted, and Count I is dismissed. Defendant's Motion to Dismiss Count II, asserting violation of Section 12(b)(3) of the BVA, as regards the claim for $850,000 in damages, is Granted, and the claim for $850,000 in damages is dismissed. Plaintiffs are granted leave to amend their Complaint as to Counts I and II. Any amendment to Counts I and II by Plaintiffs shall be filed within fourteen (14) days. Defendant's Motion to Dismiss Count III, Brooks' Tortious Interference with Contract Claim and the claim for punitive damages contained within Count III, is granted, and Count III is dismissed. Defendant's Motion to Dismiss Count IV, Brooks' Breach of Good Faith and Fair Dealing Claim, is granted, and Count IV is dismissed. Amendment to Counts III and IV is deemed futile, given the legal insufficiencies of the claims for tortious interference with contract

and breach of good faith and fair dealing. Defendant, GM, shall Answer within twenty-eight (28) days.

## **ORDER**

AND NOW, this 5th day of January, 2019, after careful consideration of Complaint (ECF No. 1), Defendant's Partial Motion to Dismiss for Failure to State a Claim and Brief (ECF Nos. 18 and 23), Plaintiff's Response and Brief in Opposition to Partial Motion to Dismiss (ECF Nos. 24 and 25), Defendant, GM's, Reply Brief (ECF No. 26), the arguments of counsel, and for the reasons stated above, Defendant, GM's, Partial Motion to Dismiss for failure to state a claim is GRANTED in part and DENIED in part. Defendant's Motion to Dismiss Count I, violation of Section 12(b)(5) of the BVA, is granted, and Count I is dismissed. Defendant's Motion to Dismiss Count II, asserting violation of Section 12(b)(3) of the BVA, as regards the claim for $850,000 in damages, is Granted, and the claim for $850,000 in damages is dismissed. Plaintiffs are granted leave to amend their Complaint as to Counts I and II. Any amendment to Counts I and II by Plaintiffs shall be filed within fourteen (14) days. Defendant's Motion to Dismiss Count III, Brooks' Tortious Interference with Contract Claim and the claim for punitive damages contained within Count III, is granted, and Count III is dismissed. Defendant's Motion to Dismiss Count IV, Brooks' Breach of Good Faith and Fair Dealing Claim, is granted, and Count IV is dismissed. Amendment to Counts III and IV is deemed futile, given the legal insufficiencies of the claims for tortious interference with contract and breach of good faith and fair dealing.

Defendant, GM, shall Answer by March 5, 2019.

BY THE COURT:

_____
Marilyn J. Horan
United States District Judge