UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROOKS AUTOMOTIVE GROUP, INC. *formerly known as* BROOKS OLDSMOBILE-CADILLAC-GMC TRUCK, INC., B.L.P. REAL ESTATE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | Case No. 2:18-cv-00798-MJH<br><br>Hon. Marilyn J. Horan |

**GENERAL MOTORS LLC'S BRIEF IN RESPONSE TO
PLAINTIFFS' MOTION FOR RECONSIDERATION**

**I.   INTRODUCTION**

Plaintiffs' Motion for Reconsideration is an impermissible attempt to get a second bite at the apple by making the same arguments about the same issues that this Court has already decided. Plaintiffs disregard the standard for reconsideration while trying to convince the Court to accept their previously expressed point of view. Even if Plaintiffs had satisfied that standard (which they did not do), their arguments fail for the same reasons as before. As this Court explained in its Opinion and Order, citing authorities supporting its decision, a tortious interference claim requires allegations of "improper conduct." There are and were no such allegations in Plaintiffs' complaint. Similarly, a claim for punitive damages requires allegations of fact concerning a risk of physical harm or an evil motive. Plaintiffs' complaint had neither. Plaintiffs' motion offers nothing new. It simply rehashes the same augments that this Court considered and rightly rejected. The motion should be denied.

1

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

As this Court knows, this matter concerns the GM-approved sale of Plaintiff Brooks Automotive Group, Inc.'s ("Brooks's") Buick GMC dealership in Connellsville.  Brooks and co-plaintiff B.L.P. Real Estate (an entity with which GM has no relationship of any kind) seek "damages" from GM for what they contend was GM's untimely and improper denial of a proposal that Brooks had submitted to sell its assets to a dealer who planned to relocate them. GM, however, approved a second proposal through which Brooks agreed to sell its assets to the same buyer without the relocation.  Plaintiffs' allegations of misconduct by GM are meritless.  In fact, several causes of action were subject to dismissal on the pleadings alone because Plaintiffs failed to state claims upon which relief could be granted.  To that end, GM filed a Partial Motion to Dismiss which this Court granted in part.

Among the claims this Court dismissed were Brooks's claim for tortious interference (Count III) and the corresponding punitive damages claim, the latter of which Plaintiffs conceded was dependent upon the tortious interference claim.  In their opposition to GM's Partial Motion to Dismiss, Plaintiffs argued that the tortious interference claim should survive, citing *Crivelli v. GMC*, 215 F.3d 386 (3rd Cir. 1999), and *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3rd Cir. 1992).[1]  This Court disagreed, concluding that *Crivelli* and the authorities cited in it supported GM's position:

> Pennsylvania has expressly adopted the Restatement (Second) of Torts, which states that a necessary element of this tort is improper conduct by the alleged tortfeasor . . .
>
> Examples of improper conduct include threats of physical violence, fraudulent misrepresentations, threats of unmerited civil or criminal litigation, economic pressure, and unlawful conduct . . . In *Crivelli*, the Third Circuit determined that 'GM's decision to

---

[1] *Big Apple* was addressed in *Crivelli*.  *Crivelli*, 215 F.3d at 395

2

> exercise its right of first refusal, is not comparable to any of the examples' in the Restatement . . .
>
> In this case, GM denied approval of the November 2016 sale because of the plan to close the Connellsville truck location. There were no issues concerning any right of first refusal as in *Crivelli*. However, such distinction does not affect the question of whether the alleged conduct of GM, in the circumstances of this case, satisfied the necessary elements for the tort of interference with a contractual relationship . . . Any allegations regarding GM's refusal to consent to the November 2016 APA arise from contractual duties between the parties with regard to changes in management and ownership. The terms of said agreement give GM sole discretion in its business judgment to execute its right to refuse consent to a transfer. Accordingly, the facts, as pleaded, do not constitute improper action sufficient for the tort claimed.

(Opinion & Order, R.E. 35, pp. 10-11.) This Court also concluded that the punitive damages claim should be dismissed because Plaintiffs conceded those alleged damages were tied to the tortious interference claim. (*Id.* at p. 15.)

Dissatisfied with this Court's Order, Plaintiffs seek reconsideration of the dismissal of the tortious interference (Count III) and punitive damages claims. In support of their motion, Plaintiffs make the exact same arguments and cite the exact same authorities they already presented to the Court.

### III. ARGUMENT

#### A. Brooks Did Not Satisfy The Reconsideration Standard.

Motions for reconsideration "should be granted sparingly and may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court." *Jarzyna v. Home Props., L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016) (internal quotations omitted). They should be denied when the moving party is making "a classic attempt at a 'second bite at the apple.'" *Bhatnagar by Bhatnagar v. Surrendra Overseas*, 52 F.3d 1220, 1231 (3rd Cir. 1995). Litigants "are not free to relitigate issues which the court has already

3

decided." *Jarzyna*, 185 F. Supp. 3d at 622 (internal quotations omitted).  "Thus, a motion for reconsideration may address only factual and legal matters that the Court may have overlooked and may not ask the Court to rethink what it had already thought through – rightly or wrongly." *Id.* (internal quotations omitted).

In their motion, Plaintiffs make the same unsuccessful arguments they made in their opposition to GM's Partial Motion to Dismiss.  Plaintiffs argued in in response to GM's motion that the tortious interference claim should survive under *Crivelli* and *Big Apple* and that, under *Golden ex rel Golden v. Golden*, 382 F.3d 348, 356-57 (3rd Cir. 2004), the complaint asserted a viable claim for punitive damages. (Response to Partial Motion to Dismiss, pp. 14-15, 16-17, R.E. 25.)  Plaintiffs make the exact same arguments in their Motion for Reconsideration. (Motion for Reconsideration, pp. 3-5, R.E. 39.)  Put simply, Plaintiffs have not offered this Court anything new, nor have they identified anything that the Court may have overlooked.  Instead, Plaintiffs rehash their arguments and ask for a different result.  This is not a proper basis for a motion for reconsideration, and the motion should be denied.

### B. The Court Properly Dismissed The Tortious Interference Claim (Count III).

Even if the Court were to entertain Plaintiffs' effort to reargue these issues, this Court should stand by its earlier decision to dismiss the tortious interference claim.  Once again, Plaintiffs argue that the claim should proceed while citing a series of cases in which courts held that the claim is ***not viable***.  *See Crivelli*, 215 F.3d at 395 (no tortious interference when auto manufacturer exercises contractual right); *Rosado v. Ford Motor Co.*, 337 F.3d 291, 296 (3rd Cir. 2003) (same); *Gabe Staino Motors, Inc. v. Volkswagen of Am.*, No. 99-5034, 2005 U.S. Dist. LEXIS 7940, at * 58-59 (E.D. Penn. Apr. 29, 2005) (same).

In *Crivelli*, which this Court relied upon, the Third Circuit Court of Appeals held that tortious interference in Pennsylvania is governed by the Restatement (Second) of Torts, which

4

requires "improper conduct." *Crivelli*, 15 F.3d at 394-95. Plaintiffs have not pleaded any facts illustrating the required improper conduct by GM. (*See*, Opinion & Order, p. 10, R.E. 35 ("the facts, as pleaded, do not constitute improper action sufficient for the tort claimed.")) Under its Dealer Sales and Services Agreement with Brooks, GM had the right to exercise its business judgment with respect to the first proposal, which Brooks and his buyer expressly acknowledged in their initial asset purchase agreement by making the transaction contingent upon GM's review and approval. Under *Crivelli*, an auto manufacturer does not – and cannot – tortiously interfere with a proposed dealership transfer by exercising its own rights concerning that proposal.[2] *Id.* at 395 ("While GM's exercise of its contractual right of first refusal necessarily interfered with the purchase agreement . . . it does not subject GM to liability for interfering with their contract.").

The only authority upon which Plaintiffs rely (again) in which a court held that a claim for tortious interference could proceed against a manufacturer is *Big Apple*. As set forth in GM's prior briefing, however, *Big Apple* has no application here because the plaintiff in that case (unlike here) made factual allegations of improper conduct. The plaintiff in *Big Apple* alleged that BMW intentionally delayed its response to a proposal for the express purpose of making certain that deadlines in the underlying agreement expired, all as part of a wrongful scheme. *Id.* at 1371. There are no such allegations of ill-intentioned or wrongful conduct alleged against GM here. The Court properly dismissed the tortious interference claim.

---

[2] Plaintiffs try to obfuscate the issue by noting that *Crivelli* concerned the exercise of a right of first refusal. This Court addressed this issue in its Opinion and Order: "[That] distinction does not affect the question of whether the alleged conduct of GM, in the circumstances of this case, satisfied the necessary elements for the tort of interference with a contractual relationship." (Opinion & Order p. 10, R.E. 35.)

5

### C. The Court Properly Dismissed The Claim For Punitive Damages.

Plaintiffs devoted a scant two sentences to their argument for the reinstatement of the punitive damages claim. (Motion for Reconsideration, p. 5, R.E. 39.) Because Plaintiffs had conceded that any punitive damages claim would be expressly limited to the tortious interference cause of action, the Court properly dismissed it when it dismissed Count III. Plaintiffs' Motion for Reconsideration does not seek to untether the punitive damages claim from Count III; it simply asks for the punitive damages claim to be reinstated along with Count III without asserting any argument concerning the merits of the punitive damages claim itself.

As correctly noted by this Court, because the punitive damages claim is tied to the tortious interference claim (Count III), the dismissal of the tortious interference claim necessarily disposes of any punitive damages. However, even if Count III were to be reinstated for some reason, the punitive damages claim should not be reinstated along with it because Plaintiffs have not alleged any facts to support it. Indeed, as GM explained its prior briefing, "punitive damages are an 'extreme remedy' available in only the most exceptional matters." *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439 (2005). Plaintiffs' motion completely ignores the requirement that a party claiming punitive damages must allege (1) a risk of physical harm or (2) an evil motive. *See Feld v. Merriam*, 506 Pa. 383, 395, 485 A.2d 742 (1984) (internal quotations omitted); *Hutchison v. Luddy*, 582 Pa. 114, 122-23, 870 A.2d 766 (2005) (noting that only recklessness creating a "high degree of risk of physical harm" is actionable); *see also Nykiel v. Borough of Sharpsburg Sharpsburg Police Dep't*, 778 F. Supp. 2d 573, 591 (W.D. Penn. 2011) ("The 'reckless indifference' mental state, required to justify the imposition of punitive damages, is obtained only where the actor knows, or has reason to know, of facts which create a high degree of risk of physical harm to another[.]" (internal quotation omitted)). The complaint did not suggest, let alone allege, facts stating, that GM's decision created a high risk of physical

6

harm (nor could it), so Plaintiffs could only sustain such a claim with facts evincing an "evil motive." There are no well-pleaded facts that GM acted with an "evil motive" in the complaint. At best, Plaintiffs offer only "labels and conclusions" with "a formulaic recitation of the elements of a cause of action" by claiming that GM engaged in "malicious" acts. (Compl. ¶ 106.) These conclusory allegations are insufficient to state a claim.

As GM explained in its Partial Motion to Dismiss, a claim for punitive damages should be dismissed if the complaint fails to allege facts supporting it. *Boring v. Google Inc.*, 362 F. App'x 273, 283 (3rd Cir. 2010) (dismissing punitive damages where the plaintiff failed to allege "facts that are suggestive enough to render [his claim] plausible") (modification in original); *see also Feld*, 506 Pa. at 396 (concluding the trial court erred as a matter of law in submitting punitive damages claim to jury). Plaintiffs did not address these authorities or arguments in their opposition to GM's Partial Motion to Dismiss. They did not address them at the hearing. They have not addressed them in the Motion for Reconsideration. This Court properly dismissed the claim for punitive damages, and the Motion for Reconsideration should be denied.

## IV.  CONCLUSION

Plaintiffs' Motion for Reconsideration should be denied.

Dated:  March 6, 2019

Respectfully Submitted,

DYKEMA GOSSETT PLLC

By: /s/Robert Hugh Ellis
Robert Hugh Ellis, Esq.
*Attorneys for General Motors LLC*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6723
rellis@dykema.com

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2019, my assistant electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

DYKEMA GOSSETT PLLC

By: /s/Robert Hugh Ellis
Robert Hugh Ellis, Esq.
*Attorneys for General Motors LLC*
400 Renaissance Center
Detroit, MI 48243
(313) 568-6723
rellis@dykema.com