IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| BROOKS AUTOMOTIVE GROUP, INC, <br> B.L.P. REAL ESTATE, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL MOTORS LLC, <br><br> Defendant, | 2:18-CV-00798-MJH |

OPINION AND ORDER

Plaintiffs, Brooks Automotive Group, Inc. ("Brooks") and B.L.P. Real Estate, LLC ("BLP"), bring the within action for damages, stemming from circumstances surrounding the sale of Plaintiff, Brooks' Automotive dealership, which required approval from Defendant, General Motors, LLC ("GM"). In their Amended Complaint, the Plaintiffs assert claims for Violation of Section 12(b)(5) of the Pennsylvania Board of Vehicles Act (63 P.S. § 818.1 *et seq*.) ("BVA")(Count I), and Violation of Section 12(b)(3) of the BVA(Count II). (ECF No. 37).

Pending before the Court are Defendant, GM's, Motion in Limine to Exclude the Opinions and Testimony of Joseph F. Roesner and Motion to Strike the February 11, 2020 Declaration of Joseph F. Roesner. (ECF Nos. 63 and 90). Upon consideration of GM's Motion in Limine and Motion to Strike and Briefs in Support (ECF Nos. 63-64 and 90-91), Plaintiffs' Responses and Briefs in Opposition (ECF Nos. 76 and 96-97), and for the following reasons, GM's Motion to Strike will be denied, and GM's Motion in Limine will be denied.

**I.  Background**

Brooks operated a Buick GMC dealership in Connellsville, Pennsylvania pursuant to a General Motors Dealer Sales and Service Agreement ("Dealer Agreement"). (ECF No. 94 at ¶

1). Brooks decided to sell its dealership, and on November 17, 2016, Brooks entered into a written Asset Purchase Agreement (the "First APA") with C. Harper Autogroup ("Harper"). *Id*. at ¶ 3. The First APA provided for a purchase price of $750,000 for goodwill plus payment of various assets. *Id*. In addition, Harper planned to discontinue Buick Operations in Connellsville and relocate GMC operations to Harper's existing Chevrolet, Buick, and Cadillac dealership in Belle Vernon. *Id*. at ¶ 4.

Under the Dealer Agreement, GM must approve any dealership sale or relocation. *Id*. at ¶ 2. In the First APA, Brooks and Harper conditioned the purchase on GM's approval. *Id*. at ¶ 5. On December 15, 2016, Brooks sent GM a signed and dated copy of the First APA. *Id*. at ¶ 8. On April 19, 2017, GM issued a letter to Brooks, with copies to Harper Autogroup, advising that GM refused approval of the November 2016 APA. *Id*. at ¶ 29. In its April 19, 2017 denial letter, GM summarized its decision to deny relocation of Brooks' dealership in Connellsville to Harper's dealership in Belle Vernon as follows:

- The permanency of the investment of the five existing Buick GMC dealers in Pittsburgh
- The declining population in and around Pittsburgh
- Existing GMC dealerships are providing adequate competition
- GM Brand Alignment
- Multiple Dealer Area (MDA) Add Point
- The likelihood of injury to our existing network outweighs any perceived benefit from increased competition
- The Proposed Dealer Company's GMC Sales Forecast

(ECF No. 61-14).

During the instant litigation, Brooks retained Joseph Roesner to conduct analysis and provide testimony regarding GM's First APA denial. (ECF No. 64-2 at pp. 3-4). In his report, Roesner stated that he relied upon certain documents such as deposition testimony, discovery documents, financial documents, correspondence, geographic information, and marketing

2

information.[1]  *Id*. at pp. 5-6.  Roesner stated that it is industry practice for GM to conduct a market analysis when a dealer proposes a relocation.  *Id*. at p. 6.  *Id*.  Mr. Roesner opines that GM's analysis of its factors that it identified in its April 19, 2017 letter were insufficient to justify its conclusions.  *Id*.  Mr. Roesner also stated that the conclusions GM reached in its denial contradicted the conclusions reached by GM in other cases involving network changes. *Id.*  Instead, Mr. Roesner states that GM's analysis appeared to be an "outcome-driven approach" with an intent to deny Brooks' relocation request.  *Id*.

When deposed by GM, counsel asked Mr. Roesner whether GM "got it wrong on every single one of its factors that it enumerated in its letter." (ECF No. 64-3 at p. 27).  Mr. Roesner responded, "I wouldn't necessarily say got it wrong….What I would say is there's some observations related to each of the factors." *Id.*  Mr. Roesner testified that he did not describe GM's denial as arbitrary, capricious, contrived, manipulated, in bad faith, reasonable, or unreasonable.  *Id.* at p. 37-40.   GM's counsel also asked, "are you going to opine in this case that General Motors' April 2017 rejection of the November 2016 asset purchase agreement was unreasonable?" *Id*. at p. 45.  In response, Mr. Roesner answered:

> Yeah, I don't -- I think I don't know that I'd use the word -- I think inconsistent may be a better choice. It's going to depend upon the factor, and as laid out in my report, would be my observations and conclusions as to what General Motors puts forward versus what I've seen elsewhere and what could be drawn from the data that is available within the backup to the decision.

*Id*. at p. 45-46.

GM has filed a Motion in Limine to Exclude the Opinions and Testimony of Joseph Roesner. (ECF No. 64).  Specifically, GM contends that Mr. Roesner's opinions are a reaction to materials presented to him, and not from any independent analysis he performed or

---

[1] A full list appears in Tab 3 of Mr. Roesner's Report.  (ECF No. 64-2 at p. 51)

methodology he employed. Moreover, GM argues that Mr. Roesner did not cite or rely upon any data or any documents from any other GM matter to form his opinion. As part of their response, Plaintiffs attached a February 11, 2020 declaration by Mr. Roesner where he describes some of the GM matters that he relied upon. (ECF No. 78). GM now seeks to strike Mr. Roesner's Declaration and/or otherwise exclude his opinions and testimony.

## II. Discussion

### a. Motion to Strike

GM argues that the Court should strike Mr. Roesner's Declaration because an expert witness may not file a post-disclosure declaration that contradicts his own report and deposition testimony. Specifically, GM contends that Mr. Roesner's report did not identify any prior GM relocation decisions that he analyzed or considered when forming his opinion regarding GM's decision to deny Brooks' relocation request. Plaintiffs contend that Mr. Roesner's Declaration does not contradict bur rather confirms that he based his report and testimony on his training, education, and experience.

The Federal Rules of Civil Procedure provide for the disclosure of expert reports as follows:

> The report must contain:
>
> > (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> > (ii) the facts or data considered by the witness in forming them;
> > (iii) any exhibits that will be used to summarize or support them;
> > (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> > (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> > (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(b). "When a deponent's post-deposition affidavit conflicts with his prior testimony, a district court may disregard the affidavit." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 639 F. App'x 874, 877 (3d Cir. 2016).

Upon review of Mr. Roesner's Declaration, it contains no additional opinions or conclusions that contradict his prior testimony. Mr. Roesner's opined in his report and testified that GM's decision in this case contradicted its decision-making in other cases. (ECF No. 64-2 at p. 6; No. 64-3 at pp. 45-46). In his Declaration, Mr. Roesner does not alter his opinion, but uses the opportunity to introduce data from other GM cases that support his conclusions. (ECF No. 78-1). In terms of fair disclosure, Mr. Roesner's original report listed the numerous cases in which he had offered deposition testimony included those he specified in his supplemental declaration, and his report states that his opinions were based upon his industry training and experience. (ECF No. 64-2 at p. 6). Therefore, the Court finds no basis to strike Mr. Roesner's declaration because it does not conflict with prior testimony, and his original report provided an adequate disclosure of the facts underlying his opinions.

Accordingly, GM's Motion to Strike Mr. Roesner's Declaration will be denied.

### b. Motion in Limine

GM contends that Mr. Roesner's opinions are not based upon sufficient facts or reliable methodology. Specifically, GM argues that Mr. Roesner's opinions and testimony are based only upon his reaction to materials presented to him, and not from any independent analysis he performed or methodology he employed. GM characterizes the opinions and testimony of Mr. Roesner as his *ipse dixit*. GM also argues that Mr. Roesner's opinions will not assist the jury. Plaintiffs contend that GM has mischaracterized Mr. Roesner's opinions and testimony, and that his methodologies are a rebuttal to the methodology used in GM's own market analysis. In

evaluating expert opinions, the Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993); s*ee also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the court's role extends not only to "scientific" testimony, but also to testimony based on technical or other specialized knowledge). The Rules of Evidence also provide as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) stated that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

The crux of Plaintiff's Section 12(b)(3) claim is whether GM acted reasonable in rejecting Brooks' relocation request as well as the factors and methodologies cited by GM in its April 19, 2017 decision letter. Mr. Roesner's report identifies each factor from the decision letter and outlines how the facts do not support the rationale or that it contradicts GM's decisions from other cases. Without expertise in the automotive industry, as proffered by Brooks through Mr. Roesner, a layman would not likely understand the methodologies utilized by GM or be able to assess whether those methodologies pass the scrutiny of another expert. In this case, Mr.

Roesner is not charged with conducting an independent analysis to demonstrate that GM should have accepted the First APA. Instead, the relevant inquiry into the Section 12(b)(3) claim is the conduct of GM in reaching its conclusions and therefore whether it acted and decided reasonably. *See Rohrich Cadillac, Inc. v. Bureau of Prof'l & Occupational Affairs, State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 73 A.3d 652, 657 (Pa. Commw. Ct. 2013) (holding Board of Vehicles' conclusions were upheld and that GM acted unreasonably because "its reasons were replete with overstatements and inconsistent calculation methods, unsupported by GM's own evidence, and outcome driven."). Therefore, at issue are the cited GM rejection factors and the methods GM used to assess and determine those factors to reach its decision to deny Brooks application for consent. Given the specialized knowledge needed to complete this analysis, the Court finds it appropriate to proffer an expert in the relevant field to offer a critique and opinion to assist the jury as it evaluates the reasonableness of GM's actions and decision. Thus, Mr. Roesner's opinions and testimony are relevant and admissible.

Accordingly, GM's Motion in Limine to Exclude the Opinions and Testimony of Joseph Roesner will be denied.

**ORDER**

And Now this 8th Day of May, 2020, after consideration of GM's Motion in Limine and Motion to Strike plus Briefs in Support (ECF Nos. 63-64 and 90-91), Brooks and BLP's Responses and Briefs in Opposition (ECF Nos. 76 and 96-97), and for the foregoing reasons, GM's Motion to Strike and GM's Motion in Limine are denied.

BY THE COURT:

Marilyn J. Horan
United States District Judge