IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| BROOKS AUTOMOTIVE GROUP, INC, <br> B.L.P. REAL ESTATE, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL MOTORS LLC, <br><br> Defendant, | 2:18-CV-00798-MJH |

OPINION

Plaintiffs, Brooks Automotive Group, Inc. ("Brooks") and B.L.P. Real Estate, LLC ("BLP"), bring the within action for damages against Defendant, General Motors, LLC ("GM"), stemming from the sale of Brooks' dealership, which required approval from GM. In their Amended Complaint, Brooks and BLP assert claims for Violation of Section 12(b)(5) of the Pennsylvania Board of Vehicles Act (63 P.S. § 818.1 *et seq.*)[1] ("BVA") (Count I), and Violation of Section 12(b)(3) of the BVA (Count II). (ECF No. 37).

GM moves for Summary Judgment pursuant to Fed. R. Civ. P. 56, seeking dismissal of Brooks' and BLP's claims. (ECF No. 58). Brooks and BLP move for partial Summary Judgment pursuant to Fed. R. Civ. P. 56, seeking judgment as a matter of law on Count I only. (ECF No. 66). The parties provided briefs, appendices, and concise statements of material facts. (ECF Nos. 59-61, 67-69, 72, 75-77, 79-84, 86-88, and 93-94). The matter is now ripe for decision.

---

[1] On October 24, 2019, the Board of Vehicles Act ("BVA") was renumbered. Any specific citations to the BVA utilize the renumbered sections. Short form citations will refer to the section numbers as enacted before codification and as referenced in Plaintiffs' Amended Complaint.

For the following reasons, GM's Motion for Summary Judgment will be granted in part and denied in part, and Brooks' and BLP's Motion for Partial Summary Judgment will be denied.

I. **Background**

Brooks operated a Buick GMC dealership in Connellsville, Pennsylvania pursuant to a General Motors Dealer Sales and Service Agreement ("Dealer Agreement"). (ECF No. 94 at ¶ 1). BLP owned the real estate where Brooks' dealership operated. (ECF No. 37 at ¶ 2). On November 17, 2016, Brooks entered into a written Asset Purchase Agreement (the "First APA") with C. Harper Autogroup ("Harper"). (ECF No. 94 at ¶ 3). The First APA provided for a purchase price of $750,000, which included goodwill plus payment for various dealership assets. *Id*. In addition, under the First APA, Harper planned to discontinue the Buick Operations in Connellsville and relocate the GMC operations to Harper's existing Chevrolet, Buick, and Cadillac dealership in Belle Vernon. *Id*. at ¶ 4.

Under the Dealer Agreement, GM must approve any dealership sale or relocation. *Id*. at ¶ 2. In the First APA, Brooks and Harper conditioned the purchase on GM's approval. *Id*. at ¶ 5. On December 15, 2016, Brooks sent GM a signed and dated copy of the First APA. *Id*. at ¶ 8. On December 22, 2016, Brooks and Harper received an Immediate Response Letter ("IRL") from GM, which requested additional information and documents from both Brooks and Harper. *Id*. at ¶¶ 9-10. On January 9, 2017, Brooks submitted its required information to GM as requested in the IRL letter. *Id*. at ¶¶ 13. On January 27, 2017, GM confirmed that it received the last of Brooks' required materials to evaluate the First APA. GM's confirmation also advised that it still needed to receive the required IRL information and documents from Harper. *Id*. at ¶¶ 13-14. Harper submitted the final IRL required information to GM on March 1, 2017. *Id*. at ¶

20. On March 16, 2017, GM emailed, confirming that it had received all the required forms and information. *Id.* at ¶ 24. On April 19, 2017, GM issued a letter to Brooks, with copies to Harper, advising that GM refused to approve the First APA. *Id*. at ¶ 29. In its April 19, 2017 denial letter, GM summarized its decision to deny relocation of Brooks' Connellsville dealership to Harper's Belle Vernon dealership as follows:

- The permanency of the investment of the five existing Buick GMC dealers in Pittsburgh
- The declining population in and around Pittsburgh
- Existing GMC dealerships providing adequate competition
- GM Brand Alignment
- Multiple Dealer Area (MDA) Add Point
- The likelihood of injury to our existing network outweighs any perceived benefit from increased competition
- The Proposed Dealer Company's GMC Sales Forecast

(ECF No. 61-14). Neither Brooks nor BLP pursued any administrative protest action before the Pennsylvania Board of Vehicles to seek an order of deemed approval of the First APA on the basis that GM's review process was untimely. (ECF No. 94 at ¶ 30). In June, 2017, after the rejection of the First APA, BLP received a written third party offer to purchase the dealership real estate for $1,300,000. (ECF No. 61-29).

On June 27, 2017, Brooks and Harper entered into a new and revised Asset Purchase Agreement for the sale of the Brooks' dealership assets (the "Second APA"). (ECF No. 94 at ¶ 32). The substantive terms of the First APA and Second APA were essentially the same, with two material exceptions: (i) the Second APA no longer contemplated relocating Brooks' dealership to the Belle Vernon Harper Autoplex; and (ii) the purchase price for the value of the Brooks' dealerships was reduced from $750,000 to $600,000. *Id.* at ¶ 52.

Because the dealership needed to remain at the Connellsville location, BLP and C. Harper and C. Harper Holdings, Inc. ("Harper Holdings") entered into a real estate Sales

3

Agreement for the Connellsville dealership property, ("Real Estate Sales Agreement"). *Id.* at ¶ 53. BLP agreed to sell the real estate to Harper Holdings for the purchase price of 1,000,000.00. *Id.* at ¶ 54. On September 5, 2017, GM approved the Second APA. *Id.* at 61. On October 23, 2017, Brooks, BLP, Harper, and Harper Holdings closed on the sales of the dealership and real estate. *Id*. at ¶ 62.

In addition to the difference in purchase price for the dealership, Brooks also claims that it suffered operating losses due to GM's rejection of the First APA. In 2017, Brooks only sold 97 new vehicles before the Second APA closed. (ECF No. 82 at ¶ 39). Brooks' October 2017 financial statement reflected total year-to-date losses of $852,983 for the period of January 1, 2017 through October 31, 2017. *Id*. at ¶ 43. Brooks also testified that GM's delay in approving the proposed sale to Harper Autogroup, along with lack inventory and proper allocation of vehicles by GM, caused the 2017 operational losses. *Id*. at ¶ 45. Although GM approved the Second APA on September 5, 2017, Brooks asserts that GM delayed the closing until October 23, 2017, because GM representatives were not sooner available to attend. *Id*. at ¶ 169. While GM claims that Brooks could have mitigated his damages through its termination assistance program, Brooks asserts that GM's termination assistance would not have compensated Brooks for the dealership's goodwill value or reimbursed it for the dealership's vehicle floor plan loan. Both of these items of value were provided for under the terms of the Second APA. *Id*. at ¶ 181. Brooks retained a damages expert, William Krieger, who testified that the losses claimed by Brooks occurred after GM denied the First APA; however, he does not opine that those losses were caused by GM's delay or denial. (ECF No. 61-28 at pp. 3-5).

During the instant litigation, Brooks retained Joseph Roesner to conduct analysis and provide testimony regarding GM's denial of the First APA. (ECF No. 64-2 at pp. 3-4). Mr.

4

Roesner testified that he would not describe GM's denial as arbitrary, capricious, contrived, manipulated, or in bad faith. *Id.* at p. 37-40. GM's counsel also asked Mr. Roesner, "[a]re you going to opine in this case that General Motors' April 2017 rejection of the November 2016 asset purchase agreement [First APA] was unreasonable?" *Id*. at p. 45. In response, Mr. Roesner answered:

> Yeah, I don't -- I think I don't know that I'd use the word -- I think inconsistent may be a better choice. It's going to depend upon the factor, and as laid out in my report, would be my observations and conclusions as to what General Motors puts forward versus what I've seen elsewhere and what could be drawn from the data that is available within the backup to the decision.

*Id*. at p. 45-46. In his report, Mr. Roesner opined that GM's rejection of the First APA was contrary to the conclusions GM had reached in other dealership relocation cases. (ECF No. 64-2 at p. 6). In his report, Mr. Roesner offered rebuttals to each of the factors enumerated in GM's rejection letter. *Id*. at pp. 10-18. Mr. Roesner also opined that the conclusion by GM to deny the First APA, "overall had the appearance of an outcome-driven approach with the intent to deny Brooks' change request." *Id*. at p. 18.

## II. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

#### A. Section 12(b)(5) of the Board of Vehicles Act

Both Plaintiffs and GM seek summary judgment on whether GM violated Section 12(b)(5) of the BVA. Plaintiffs contend that GM violated Section 12(b)(5) because it responded to the submission of the First APA 52 days beyond the statutorily prescribed period. GM argues that it timely responded to the First APA because the statutory period did not begin to run until GM received the initial forms and information it requested from both Brooks and Harper. Section 12(b)(5) of the BVA provides as follows:

> (b) Violations.--It shall be a violation of this act for any manufacturer, factory branch, distributor, field representative, officer, agent or any representative whatsoever of such manufacturer, factory branch or distributor licensed under this act to:
>
> \*\*\*
>
> (5) **Fail to respond in writing to a request for consent as specified in paragraphs (3) and (4) within 60 days of receipt of a written request on the forms, if any, generally utilized by the manufacturer or distributor for such**

> **purposes and containing the information required. The failure to respond within the time period set forth in this paragraph shall be deemed to be approval of the request**, and the manufacturer or distributor shall execute and deliver a franchise to the applicant within 30 days of the expiration of this time period. A manufacturer or distributor shall acknowledge in writing to the applicant the receipt of the forms, and, if the manufacturer or distributor requires additional information to complete its review, the manufacturer or distributor shall notify the applicant within 15 days of the receipt of the forms. If the manufacturer or distributor fails to request additional information from the applicant within 15 days after receipt of the initial forms, the 60-day time period for approval shall be deemed to run from the initial receipt date. Otherwise, the 60-day time period for approval shall run from receipt of the supplemental requested information. In no event shall the total time period for approval exceed 75 days from the date of the receipt of the initial forms.

63 P.S. § 818.310(b)(5) (emphasis added). Neither review by the Court nor citation from the parties reveal any case law interpreting or applying Section 12(b)(5) of the BVA. However, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a).

Here, Brooks submitted the First APA to GM on December 15, 2016. On December 22, 2017, GM responded with an IRL, which outlined the forms and documentation GM required both Brooks and Harper to complete before GM could review the relocation proposal. While Brooks submitted its forms by January 10, 2017 (ECF No. 67 at ¶ 26), GM did not receive the last of Harper's forms until March 1, 2017 (ECF No. 59 at ¶ 20). On March 16, 2017, GM acknowledged that it had received all required initial forms and information that it had requested in its IRL. (ECF No. 94 at ¶ 24). GM did not request any additional information from either Brooks or Harper. As such, the 60-day period for GM to communicate its decision under Section 12(b)(5) began to run as of March 1, 2017.

In their Motion for Partial Summary Judgment (ECF Nos. 66 and 68) and in their Response to GM's Motion for Summary Judgment (ECF Nos. 79 and 81), Plaintiffs argue that

the 60 (or 75) day time period should be calculated from December 15, 2016, the date when the First APA was submitted to GM. Brooks also argues that GM did not have any standard forms to request information for its review of requests for consent from dealers. Such argument is not supported by the record. In its IRL, which was initially sent to both Brooks and Harper, GM expressly identified all necessary information and forms that both Brooks and Harper needed to complete and submit in order to enable GM to conduct its review and render its decision. (ECF No. 61-5). Under Brooks' interpretation, that the submission of the First APA in and of itself served as the "request for consent" under Section 12(b)(5), ignores the latter part of that Section which indicates that the time period begins when GM "receives the forms, if any, generally utilized by the manufacturer or distributor for such purposes **and containing the information required**." (emphasis added). When he was deposed, Brooks acknowledged that GM's investigation process required information from Harper and Brooks. (ECF No. 61-1 at pp. 13-16). Brooks also acknowledged that GM outlined the required information through its IRL. *Id*. An informed decision process cannot begin until the required initial information has been provided. The statute allows for manufacturers to prescribe the initial required information, and once such information is submitted, the statutory time limit for the manufacturer to perform its investigation and to convey its decision, 60 or 75 days, begins to run. Brooks' argument and proposed interpretation of Section 12(b)(5) would frustrate the statutory purpose of maintaining a balance between dealers and manufacturers.[2] Under Brooks' analysis, delayed submission of requested information to the manufacturer would effectively shorten the BVA statutory time for

---

[2] "[T]he Board of Vehicles Act is intended 'to promote fair dealing and honesty in the vehicle industry and among those engaged therein without unfair or unreasonable discrimination or undue preference or advantage.'" *Rohrich Cadillac, Inc. v. Bureau of Prof'l & Occupational Affairs, State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 73 A.3d 652, 657 (Pa. Commw. Ct. 2013).

the manufacturer to fairly investigate and decide the request, or it could result in a deemed approval of the request. Neither result would be consistent with the provisions or intent of Section 12(b)(5).

Here, upon its receipt of the First APA, GM initially sent its IRL to Brooks and Harper requesting submission of the required documentation to enable GM to investigate and decide upon the request for consent. GM received the final submission of the information initially requested through its IRL on March 1, 2017. The 60-day clock therefore did not begin for GM until March 1, 2017. Therefore, when GM responded to the First APA on April 17, 2017, it timely responded under Section 12(b)(5) of the BVA. GM did not violate Section 12 (b)(5) of the BVA.

Accordingly, GM's Motion for Summary Judgment, as to Count I of the Complaint, will be granted. Further, Brooks' and BLP's Motion for Partial Summary Judgment, as to Count I of the Complaint, will be denied. Judgment on Count I will be entered in favor of the Defendant, GM.

In light of the above, GM's Motion for Summary Judgment, as to Brooks and BLP's Count I damages claim, is moot.

### B. Violation of BVA Section of 12(b)(3)

#### 1. Merits under Section 12(b)(3)

GM contends that Brooks' and BLP's Section 12(b)(3) claim fails because defense cannot demonstrate that GM's rejection of the First APA was unreasonable. Brooks and BLP argue that the reasonableness or unreasonableness of GM's conduct in rejecting the First APA remains a disputed question of fact based upon the report and testimony of their expert, Joseph Roesner.

9

Under Pennsylvania law, a manufacturer may not:

> (3) **Unreasonably withhold consent** to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth who meets the manufacturer's . . . reasonable requirements for appointment as a dealer.

63 P.S. § 818.310(b)(3) (emphasis added). As noted by the Pennsylvania Commonwealth Court, "the Board of Vehicles Act does not define the terms 'unreasonable' or 'reasonable.'" *Rohrich Cadillac, Inc. v. Bureau of Prof'l & Occupational Affairs, State Bd. of Vehicle Mfrs., Dealers & Salespersons*, 73 A.3d 652, 657 (Pa. Commw. Ct. 2013). The *Rohrich* Court stated that "the Board of Vehicles Act is intended 'to promote fair dealing and honesty in the vehicle industry and among those engaged therein without unfair or unreasonable discrimination or undue preference or advantage.'" *Id.* (citations omitted). Accordingly, *Rohrich* adopted the approach of Pennsylvania Courts from other franchisor/franchisee contexts. *Id*. Under this approach, "a franchisor is required to deal with franchisees 'in good faith and in a commercially reasonable manner'" *Id*. (quoting *Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 742 (Pa. 1978)). Further, "'good faith' requires 'honesty in fact in the conduct or transaction concerned.'" *Id*. (quoting *Loos & Dilworth v. Quaker State Oil Refining Corp.*, 500 A.2d 1155, 1160–61 (Pa. Super. Ct. 1985). In addition, "[a] vehicle manufacturer's conduct that fails to meet standards of good faith and honesty may therefore properly be found unreasonable under the Board of Vehicles Act." *Id*. (citations omitted). In *Rohrich*, the Pennsylvania Commonwealth Court upheld the Board of Vehicles' conclusions that that GM acted unreasonably because "its reasons were replete with overstatements and inconsistent calculation methods, unsupported by GM's own evidence, and outcome driven." *Id*. at 658. Case law supports that the focus is not just on the final decision of the manufacturer, but it also considers the process by which the manufacturer completed its investigation to reach its decision.

Here, Mr. Roesner's testimony and report opined that GM's rejection of the First APA was "outcome driven" and contrary to the conclusions GM had reached in other dealership relocation cases. (ECF No. 64-2). He supported these conclusions with specific rebuttals of the factors enumerated by GM in its rejection letter. *Id*. at p. 10-18. He further provided a supplemental declaration that outlined other relocation cases where GM had reached contrary conclusions. (ECF No. 78). Although Mr. Roesner's testimony equivocates and does not expressly conclude that GM's conduct was in "bad faith" or "unreasonable," such testimony would speak to the ultimate issues in this case. *See Berckeley Inv. Grp, Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006) (holding that an expert witness is prohibited from rendering a legal opinion because it would usurp the District Court's pivotal role in explaining the law to the jury). Instead, Roesner's opinions, regarding inconsistencies and outcome driven approaches, address the process by which GM made its determination and tracks with the language in *Rohrich*. Such testimony is sufficient to raise questions of material facts that require jury determination of whether the Plaintiff has met its burden to prove unreasonableness under BVA Section 12(b)(3). As such, summary judgment is not available for Brooks and BLP's liability claim in Count II, BVA Section 12(b)(3). Accordingly, GM's Motion for Summary Judgment, as to liability under Count II of the Amended Complaint, will be denied.

    **2. BLP's damages claim**

GM contends that, even if the Court were to find a genuine issue of material fact as to liability under Plaintiffs' Section 12(b)(3) claim, BLP cannot claim damages based upon the rejection of the First APA. Plaintiffs argue that GM's rejection of the First APA caused BLP to sell its real estate for a loss of $300,000. "To satisfy the requirement of causation, the complainant must demonstrate that the breach was both the proximate cause and the actual cause

of his injury." *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (1993). GM argues that BLP cannot demonstrate that the rejection of the First APA caused its $300,000 loss because BLP had a written offer of $1,300,000 to purchase its real estate on June 22, 2017, two months after GM rejected the First APA. (ECF No. 61-29). Deposition testimony on behalf of Brooks and BLP establishes that, while Mr. Brooks' deposition testimony is not clear concerning the facts about which they argue, Brooks and BLP's Counterstatement of Facts (ECF No. 82 at ¶¶ 178-180) and their Brief in Response (ECF No. 81), assert that, after GM denied the First APA, Brooks could no longer contemplate moving the dealership from the BLP property. Therefore, Brooks and BLP argue that, while BLP may have been able to sell the property for $1,300,000 to a third party, Brooks would have lost the sale of its dealership assets and goodwill, (i.e. $600,000), to Harper if the BLP real estate was not a part of the Second APA. Considering the totality of the circumstances, Plaintiffs have adduced enough evidence to raise a question of material fact as regards BLP's claimed damages.

Accordingly, GM's Motion for Summary Judgment, as to BLP's claim for damages under Section 12(b)(3), will be denied.

### 3. Brooks' Operating Losses

GM contends that Brooks has no evidence that GM's rejection of the First APA was the proximate cause of Brooks' claimed operating loss damages. Brooks argues that they have produced testimony and evidence that establishes that Brooks suffered operating losses based upon GM's delays and rejection of the First APA. Here, Brooks has testified that the alleged delays caused by GM's unreasonable denial of the First APA caused dealership operating losses totaling $852,983. (ECF No. 84-38 at p. 21). Brooks testified that GM's inventory allocation system made it difficult for dealers to sell vehicles such that he only sold 97 vehicles in 2017.

12

*Id*. at pp. 5-6. He also testified that, when word got around that he was selling his dealership, he lost employees and his customer base. He attributes such losses in sales, employees, and customer base to GM's denial of the First APA. *Id*. at pp. 21-22. In addition, Brooks asserts that GM delayed the closing on the Second APA from September 5, 2017 to October 23, 2017, which also caused him operational losses. (ECF No. 82 at ¶ 39).

"[C]onduct is a proximate cause of the plaintiff's harm where the conduct 'was a substantial factor in bringing about the harm inflicted upon a plaintiff.'" *Straw v. Fair*, 187 A.3d 966, 993 (Pa. Super. Ct. 2018) (citations omitted). While Brooks argues that its claimed losses were caused by GM's denial of the First APA, there is no evidence that creates any question of material fact as to any causal link between such claimed losses and GM's denial. Brooks' expert, Krieger, testified that the losses claimed by Brooks occurred in time after GM denied the First APA, but he does not causally relate those losses as having been caused by GM's denial. (ECF No. 61-28 at pp. 3-5). Krieger's opinion sets forth merely a but-for relationship between the losses and the rejected First APA. Recovery of business losses as damages "requires not only 'but-for' causation in fact but also that the conduct be a substantial factor in bringing about the harm." *National Controls Corp.v. National Semiconductor Corp.*, 833 F.2d 491, 496 (3rd Cir. 1987) (internal quotations omitted). A business seeking such damages must prove that its losses were "proximately caused by [the]breach, and not through some other cause." *Id.* at 496. Presently, there is no evidence to establish any question of material fact to link the issue of causation of the operating losses to the denial of the First APA.

Accordingly, GM's Motion for Summary Judgment, regarding Brooks' operating losses under Section 12(b)(3), will be granted.

## IV. Conclusion

Upon consideration of the foregoing, GM's Motion for Summary Judgment will be granted in part and denied in part. GM's Motion will be granted as to Count I, violation of the Board of Vehicles Act, Section 12(b)(5). Brooks and BLP's Motion for Partial Summary Judgment as to said Count I will be denied. Summary judgment in favor of GM on Brooks and BLP's claim under Count I, Section 12(b)(5) of the Board of Vehicles Act, will be granted. Further, GM's Motion for Summary Judgment as to Count II, liability under the Board of Vehicles Act, Section 12(b)(3) will be denied. In addition, GM's Motion for Summary Judgement as to Count II, BLP's damages claim for real estate sale, will be denied. Finally, GM's Motion for Summary Judgment as to Count II, damages for Brooks' claimed operating losses, will be granted. Judgment will be granted in favor of GM as to said claimed damages.

A separate order will follow.

BY THE COURT:

Dated: May 8, 2020

Marilyn J. Horan
United States District Judge